**TULSA OPERA HOUSE CO. et al. v. MITCHELL et al.**

No. 22174. Sept. 12, 1933.

Woodson E. Norvell, for plaintiffs in error.

Davidson & Williams, for defendants in error.

OSBORN, J. This action was commenced in the district court of Tulsa county by the Tulsa Opera House Company, for the use and benefit of C. L. Reeder and Jessica V. Reeder, against Young O. Mitchell, Garland C. Mitchell, Edwin Harrison, and Frank Newkirk, as trustees of John O. Mitchell Company, also Young O. Mitchell, as administrator of the estate of John O. Mitchell, deceased, and the John O. Mitchell Company, for an accounting for some shares of stock of the Tulsa Opera House Company.

At the conclusion of the trial of said cause, a demurrer to the evidence of plaintiffs was sustained, from which order the plaintiffs have appealed.

It appears that during the pendency of the action C. L. Reeder died and Jessica V. Reeder was appointed administratrix of his

estate, and the cause was thereafter revived in her name as administratrix.

Plaintiffs' petition states that at and prior to January 13, 1913, plaintiffs Jessica V. Reeder and C. L. Reeder were the owners of approximately 75 per cent. of the shares of the capital stock of the Tulsa Opera House Company, of the alleged value of $40,000; that on said date the company was being pressed for payment of its obligations, and made arrangements for the transfer of a portion of said stock to the company, in order that an arrangement could be made, as hereinafter set out, for refinancing the company; that on the aforesaid date an agreement was entered into between the company and John O. Mitchell and J. E. Crosbie, the material parts of which are as follows:

"That, whereas, in order to protect the interest of the Tulsa Opera House Company, necessary indebtedness has been incurred, and owing to the distressing business condition incidental of the distressed theatrical business, it has been impossible to realize promptly the rental due the corporation, and on account of pressing demands to properly liquidate the indebtedness of the Tulsa Opera House Company, it becomes imperative that some arrangement be made that will protect the Tulsa Opera House Company from great loss. Therefore, be it resolved that the board of directors do hereby authorize the president and secretary to enter into suitable arrangements for financing the indebtedness of said corporation, and

"Whereas, J. E. Crosbie and John O. Mitchell of Tulsa, Okla., agree that in consideration of 50 per cent. of the capital stock of said corporation, they will assume the responsibility of financing the affairs of said corporation in such manner that the revenue derived from the rentals of said opera house shall eventually be applied upon the full payment and liquidation of indebtedness against said corporation, and realizing the value of said protection, it is, therefore, resolved that the proposition of J. E. Crosbie and John O. Mitchell to finance the affairs of the Tulsa Opera House Company be accepted, and the president and secretary of this corporation be authorized to complete said negotiations with them with the understanding that the stock of said corporation to be transferred to them shall not be negotiable or transferable by them until they shall have complied with their agreement and liquidated the indebtedness of the Tulsa Opera House Company.

"And it is further resolved that this board of directors hereby select J. E. Crosbie as vice president and John O. Mitchell as treasurer of said corporation and the funds of said corporation shall be dispensed entirely through the said John O. Mitchell, as treasurer, and the said John O. Mitchell shall keep accurate account as to all receipts and expenditures of said corporation pending the fulfillment of their agreement without expense to this corporation."

That pursuant to said agreement 50 per cent. of the stock was transferred to Mitchell and Crosbie, and they took over the operation of said company, using the income received therefrom for payment of outstanding obligations; that Crosbie later transferred the stock issued to him to John O. Mitchell, and Crosbie disclaims any interest herein; that on December 16, 1919, an agreement and declaration of trust was entered into between John O. Mitchell and the other defendants for the transaction of various and sundry kinds of business, and that the trust thereafter took over and managed the affairs of the company.

Plaintiffs further allege that on October 10, 1920, the opera house building caught fire and was burned and totally destroyed, at which time approximately 85 per cent. of the indebtedness of the company was unpaid and undischarged; that the defendants operating the business (which plaintiffs refer to as a general partnership, and the defendants refer to as a trust) collected a large sum of money by reason of a fire insurance policy upon the property, and thereupon paid the entire indebtedness of the company, which left a balance on hand in the company's treasury; that thereupon it became the duty of defendants to return to the company the shares of stock transferred to them which originally belonged to C. L. Reeder and Jessica V. Reeder, since they had not fulfilled the terms of the agreement hereinabove set forth and since it was at that time impossible for them to do so; and that they had committed a breach of said duty and obligation by selling said shares of stock to innocent purchasers. Plaintiffs allege that the value of said stock is $40,000, for which sum they are entitled to judgment with interest.

The defendants answered by a general denial and admitted the execution of the agreement hereinabove set out, and alleged that the stock in question was worth $5,000 instead of $40,000; and further pleaded that at the time of the execution of the original agreement a mortgage of $20,000 to the Deming Investment Company had been prosecuted to foreclosure, and that an order of sale had been issued directing the sheriff to sell said property on January 13, 1913, and that the said John O. Mitchell and J. E. Crosbie indorsed and guaranteed a note in

the sum of $9,000, which was used to settle a part of the indebtedness above mentioned, thereby averting the foreclosure sale. Defendants further contend that C. L. Reeder at all times during the course of the transactions involved herein was a director and president of the Tulsa Opera House Company, and, as such, signed all of the issues of stock involved in this controversy, including the stock transferred from defendants to W. E. Chastain and Geo. L. Cathey, which constituted a waiver of his right to proceed against defendants on the basis of the contract of January 13, 1913.

It is further alleged that on March 7, 1921, C. L. Reeder sold and delivered to the said Chastain and Cathey all of the stock which he held in the company for a consideration of $10,500, and at the same time disclaimed any interest in the shares of stock of said corporation issued to J. E. Crosbie and John O. Mitchell under and by virtue of the agreement of January 13, 1913, but at the same time specifically reserved any right of action he might have against Mitchell and Crosbie or the John O. Mitchell Company for damages by reason of the sale and transfer of the stock issued to them, contrary to the terms under which it was issued. Said contract is hereinafter set forth in full as follows:

"This agreement made and entered into this 7th day of March, 1921, by and between C. L. Reeder of Tulsa, Okla., party of the first part, and W. E. Chastain and George T. Cathey, of Tulsa, Okla., hereinafter called parties of the second part:

"Witnesseth: That the party of the first part, in consideration of the sum of ten thousand five hundred dollars ($10,500), to him this day in hand paid by the parties of the second part, receipt whereof is hereby acknowledged, does hereby assign, transfer, set over, and convey to parties of the second part all of the shares of capital stock by him held or owned, whether standing in his name on the books of the company or not, and in which he now has any interest or estate whatsoever, which said sale, transfer, and assignment covers the shares of stock represented by certificate No. 58 for 285 shares, issued to C. L. Reeder; Certificate No. 59 for 141 shares issued to the Tulsa Opera House Company and indorsed by the Tulsa Opera House Company and now owned by C. L. Reeder, and all the right, title, and interest of the said C. L. Reeder in the 70 shares of stock represented by certificate No. 56 issued to C. L. Reeder, the said certificate being held as collateral security to an obligation of the said C. L. Reeder. All the rights of the said C. L. Reeder therein are transferred, sold, and assigned to the parties of the second part, subject only to the rights and pledges thereof.

"Party of the first part, for the consideration aforesaid, disclaims any interest in the shares of stock issued to J. E. Crosbie and John O. Mitchell under and by virtue of the action of the board of directors on January 13, 1913, and waives any right of action whatsoever against the parties of the second part, or their assigns, by reason of, or on account of, the acts of the said John O. Mitchell and J. E. Crosbie in relation to such stock. But said party of the first part does not hereby waive whatever right of action he may have against the said John O. Mitchell, or the said J. E. Crosbie for damages by reason of the sale of the said stock and transfer of said stock by the said John O. Mitchell and J. E. Crosbie, contrary to the terms on which it was issued.

"In witness whereof the parties hereto have hereunto subscribed their names, the day and year first above written,

"(Signed) C. L. Reeder
"(Signed) W. E. Chastain
"(Signed) Geo. T. Cathey."

Defendants further alleged that after the opera house was destroyed by fire, the company decided not to build, but to settle up the affairs of the company and distribute its assets to the stockholders, and later the stockholders decided to sell all of their interest to the said Chastain and Cathey, which transaction was carried out, and in which the said C. L. Reeder received $10,500 and in which the John O. Mitchell Company and Young O. Mitchell received $20,000, and in which Zilla Koehne received $9,500 or $10,000.

The defendants contend that the plaintiffs are estopped to set up failure of defendants to carry out the terms of the original contract made on June 13, 1913, since it is now impossible to carry out said contract, and that the conduct of C. L. Reeder, as a member of the board of directors and president of the company, as an active participant in all of the transactions of the company, more particularly the various transfers of stock, has estopped the said C. L. Reeder and, consequently, plaintiff Jessica V. Reeder, as administratrix of his estate, from asserting that there was fraud in the various transfers of stock, and that the voluntary action of said Reeder in failing and refusing to rebuild the opera house, thereby making it impossible for the defendants to comply with the original contract, has removed such limitations as there might have been against the right of defendants to transfer the stock held by them under the original agreement, so that plaintiffs cannot now recover.

From the express terms of the contract

it is apparent that the parties thereto contracted with each other on the assumption that the opera house building would continue to exist, and would be available to defendants for the purpose of carrying out the terms of said contract in applying the net proceeds to the liquidation of the indebtedness. Said property, without fault on the part of either of the contracting parties, was completely destroyed, thereby making impossible the further performance of the terms of the contract · by the defendants. In the case of Texas Company v. Hogarth Shipping Corporation, 256 U. S. 619, 41 Sup. Ct. 612, 65 L. Ed. 1123, the court, speaking through Mr. Justice Van Devanter, said:

"It long has been settled in the English courts and in those of this country, federal and state, that where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance and without the default of either party, the particular thing ceases to exist or be available for the purpose, the contract shall be dissolved and the parties excused from performing it. Taylor v. Caldwell, 3 Best & Smith, 826; In re Shipton, Anderson & Co. (1915) 3 K. B. 67; Horlock v. Beal (1916) 1 A. C. 486, 494, 496, 512; Bank Line, Ltd., v. Arthur Capel and Co. (1919) A. C. 435; The Tornado, 108 U. S. 342, 349-351, 2 Sup. Ct. Rep. 746, 27 L. Ed. 747; Chi., Milwaukee & St. Paul Ry. Co. v. Hoyt, 149 U. S. 1, 14. 15; 13 Sup. Ct. Rep. 779, 37 L. Ed. 625; Wells v. Calnan, 107 Mass. 514, 9 Am. Rep. 65; Butterfield v. Byron, 153 Mass. 517, 27 N. E. 667, 12 L.R.A. 571, 25 Am. St. Rep. 654; Dexter v. Norton, 47 N. Y. 62, 7 Am. Rep. 415; Clarksville Land Co. v. Harriman, 68 N. H. 374, 44 Atl. 527; Emerich Co. v. Siegel, Cooper & Co., 237 Ill. 610, 86 N. E. 1104, 20 L.R.A. (N.S.) 1114."

By the destruction of the property the rule of law above announced discharged each of the parties from further liability under the terms of the contract. But, in any event, the parties, by their acts, conduct, and agreements, mutually abandoned said contract in that at a stockholders' meeting held in November, 1920, the plaintiffs and defendants, all being stockholders, affirmatively voted not to rebuild the opera house, but to sell the property. In view of this action, it is immaterial whether, as charged by defendants, plaintiffs were responsible for the failure to rebuild, or, as charged by plaintiffs, defendants were responsible for the failure to rebuild. Both plaintiffs and defendants treated the contract as discharged. In the case of Baker v. School District No. 48 (Neb.) 233 N. W, 897, it is said:

"Where a contract is entered into and thereafter each party thereto performs acts inconsistent with its existence, but in each instance the inconsistent act of the one party is acquiesced in by the other, such contract will be treated as abandoned by mutual consent."

See, also, Herpolsheimer v. Christopher, 76 Neb. 352, 107 N. W. 382, 111 N. W. 359, 9 L. R. A. (N. S.) 1127, 14 Ann. Cas. 399; Kester v. Nelson (Mont.) 10 P. (2d) 379.

· The contract being ended as to liability of each of the parties for the performance thereof, what are the further rights of the parties to said contract as disclosed by the record in this case? The agreement of defendants was to take charge of the property, operate it, and apply the proceeds to the full liquidation of the indebtedness. This became impossible by the accidental destruction of the property. But plaintiffs had caused to be transferred to defendants 50 per cent. of the stock of said company as full consideration for the liquidation of the indebtedness of said company existing at the time of said contract. Defendants had operated said property for several years, and while defendants had assumed certain personal liabilities on some of said indebtedness, only approximately 15 per cent. of the total indebtedness agreed to be paid under the terms and in the manner set forth in said contract had in fact been paid. The balance of the indebtedness was paid out of the proceeds of the insurance money, which represented the corpus of the property itself. It is, therefore, apparent that, as to the unpaid indebtedness, there was a partial failure of consideration for the transfer of the 50 per cent. of the stock of said company under the terms of said contract. The judgment of the trial court, in refusing plaintiffs any relief, had the effect of absolving defendants from further liability, in that the corpus of the property, or insurance money, was used to discharge the balance of consideration for the transfer of said stock. In this the judgment of the court is clearly erroneous.

In the case of William F. Mosser Co. v. Cherry River Boom & Lumber Co., 290 Pa. 67, 138 Atl. 85, it is said:

"Where contract becomes impossible of performance, relation ends, and money advanced may be recovered back."

In the case of Bell v. Kanawha Traction & Electric Co. (W. Va.) 98 S. E. 885, it is said:

"But in such case, where one party has paid the full consideration for the contract, in accordance with its terms, and the other party has not performed, or has only partially performed, the party so performing will be entitled to recover back the consideration paid by him, or its value, in toto or pro tanto as the failure to perform by the other party is total or only partial."

In the case of Jones-Gray Construction Co. v. Stephens (Ky.) 181 S. W. 659, it is said:

" 'Where there is a bilateral contract for an entire consideration moving from each party, and the contract cannot be performed, it may be held that the consideration on each side is the performance of the contract by the other, and that a failure completely to perform it is a failure of the entire consideration, leaving each party, if there has been no breach or fault on either side, to this implied assumpsit for what he has done. If the owner in such a case has paid in advance, he may recover back his money, or so much of it as was an overpayment.' Citing—Butterfield v. Byron, 153 Mass. 517, 27 N. E. 667, 12 L.R.A. 571, 25 Am. St. Rep. 654, and notes to 5 L.R.A. (N.S.) 1110, Ann. Cas. 1913A, 458."

In the case of Board of Education v. Townsend, 63 Ohio St. 514, 59 N. E. 223, 52 L. R. A. 868, it is said:

"We are not aware of any principle, and have not been referred to any adjudicated case, that would give absolution from the obligations of a contract to a party who has received from the other full consideration for a promise which the former has become unable to fulfill, and at the same time protect him in the enjoyment of the consideration paid. The act of God may properly lift from his shoulders the burden of performance, but has not yet been extended so as to enable him to keep the other man's property for nothing."

Black, on Rescission and Cancellation, par. 535, announces the rule as follows:

"Where a contract for work and labor or for the rendition of any services has been partially performed and is then rescinded by mutual agreement, the party performing may recover a fair and reasonable compensation for his services actually rendered at the time of rescission."

See, also, 13 C. J. 644.

Applying the above enunciated principles to this case, the court should determine the percentage of partial failure of considera-tion under the terms of said contract, and should apply said percentage to the value of the stock so transferred to defendants as of the date of the abandonment of said contract. In determining this issue the court may take into consideration the services performed by defendants, any enhancement of the value of the property, if any, through their efforts, and such other factors as may be just and equitable between the parties, giving due regard to the agreements contained in said contract.

There is no merit in the contention of defendants that plaintiffs are estopped to assert the liability of defendants under said contract. It is not shown that defendants, by any conduct or acts of plaintiffs, were induced to alter their position in any manner to their prejudice. Flesner v. Cooper, 62 Okla. 263, 162 P. 1112; Spencer v. First National Bank of Alva, 116 Okla. 178, 243 P. 943; Hughes v. Sparks, 98 Okla. 208, 224 P. 957; Rosen v. Martin, 102 Okla. 65, 226 P. 577.

The judgment of the trial court is reversed and the cause remanded, with directions to take further action in conformity with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. WELCH, J., absent.