THE STATE OF FLORIDA on the relation of the PACIFIC MUTUAL LIFE INSURANCE COMPANY, a corporation organized and existing under the laws of the State of California, and duly authorized to do business as a Life Insurance Company in the State of Florida, v. J. ED LARSON, as State Treasurer and Ex Officio Commissioner of the State of Florida, and J. M. LEE, as Comptroller of the State of Florida.

12 So. (2nd) 896
April 13, 1943
Rehearing Denied May 3, 1943

January Term, 1943
Division A

*Oven, Stanley & Oven* and *W. J. Oven,* for relator.

*J. Tom Watson,* Attorney General, and *Lewis W. Petteway,* Assistant Attorney General, for respondent.

CHAPMAN, J.:

This is a case of original jurisdiction in mandamus. The facts are not in dispute and the motion to quash directed to

the alternative writ presents for adjudication purely a question of statutory interpretation. The relator contends that he overpaid to the state treasurer under the provisions of Chapter 19501, Acts of 1939, Laws of Florida, as taxes on premiums from policy holders for the years 1939, 1940 and and until May 29, 1941, "on policies surrendered for cash value," in amounts viz: the sum of $1466.29 for the year 1939, being 2% on $73,314.72; the sum of $1,600.58 for the year 1940, being 2% of $80,029.00; and the sum of $384.64 for the period of January 1, 1941 to May 28, 1941, being 2% of $19,232.00. Warrants payable to the relator for said sums, respectively, on the part of the state treasurer and comptroller are the objective of the suit at bar. Chapter 19501, *supra*, was before us in the case of Volunteer State Life Insurance Co. v. Larson, 147 Fla. 118, 2 So. (2nd) 386.

Section 1182 C.G.L., levied a tax of 2% on the gross premiums received from policy holders by insurance companies authorized to do business in the State of Florida. The amount of the gross premiums received is to be determined under the provisions of Chapter 19501, *supra*. The Act provides for a tax calculated on the gross premiums received by insurance companies from the policy holders. Items authorized to be deducted from the gross premiums are viz: (1) the amount of premiums on re-insurance accepted; (2) less the amount of premiums returned to the policy holders; (3) and less the amount of premium for policy cancellations.

Counsel for the relator contend that moneys paid by life insurance companies to policy holders "as the cash surrender values on the policies" and on the payment thereof and when said policies are surrendered and cancelled, then the amount of the payments thereof under the provisions of Chapter 19501, *supra,* are deductible and a 2% tax cannot be lawfully collected on said amount; that the words "and cancellations" appearing in the act includes and means the "cash surrender values on policies." The administrative construction of the act does not sustain this view, hence the reason for this controversy.

Cancellation, generally stated, is a right to rescind, abandon or cancel a contract of insurance and may be author-

ized by: (a) statute; (b) terms of the contract of insurance; (c) breach of the contract; and (d) consent of the parties. If the policy has been obtained by fraud, misrepresentation, or mistake, courts of equity, on proper showing, may decree cancellation. Other lawful reasons sustaining cancellation exist. See Joyce on "The Law of Insurance," Vol. 3 (2nd ed.) pp. 2765-6, par. 1634.

The cash surrendered values on policies of life insurance are property rights generally created or established by the provisions in contracts of life insurance. It may embrace various items recognized in the field of life insurance; (a) paid up insurance; (b) loan values; (c) automatic extension rights; (d) reserves; (e) accretions from various sources. The time of surrender and amounts paid usually are fixed by the several terms or conditions making or constituting the contract of insurance. See 29 Am. Jur. pp. 274-5, par. 299.

The administrative construction for a long period of time is to the effect that "cancellations," appearing in the Act, do not include or compromise the property right stipulated for, created and established by the parties in the terms of a contract of insurance commonly referred to as the "cash surrender value of a policy." Various items, according to each contract, may enter into, include, and compose the property right recognized as the "cash surrender value of a policy." The payment by the insurance company to the policy holder of the "cash surrender value of a policy" and the surrender thereof by the policy holder to the insurance company is not a "cancellation" within the terms of the Act, but is simply a performance of the obligations of the contract as originally entered into by the parties. The policy, when cashed and surrendered as betwen the parties, became *functus officio*. It was not the intention of the Legislature when using the term "cancellation" to make it embrace or include the "cash surrender value of a policy of life insurance."

Counsel for relator contend that the motion to quash the alternative writ should be overruled and denied under the authority of Volunteer State Life Insurance Co. v. Larson, *supra*. The basis of such a contention can or may find support in awkward expressions employed by the writer of the

opinion. These ambiguities of expression must yield to the clear intention of the Legislature found in the terms of the Act. The phrases and expressions appearing in the opinion of Volunteer State Life Insurance Co. v. Larson, 147 Fla. 118, 2 So. (2nd) 386, in conflict with and contra to this opinion are receded from and hereby overruled.

The motion to quash the alternative writ of mandamus is hereby sustained. It is so ordered.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.