Samuel **JOHNSON**, John **Williams**, Nero **Pender**, James **Williams**, John **Hinson**, Henry **Smith**, Rev. **King Solomon Du-Pont** and John **H. Cobbs**, as the Board of Trustees of the Fountain Chapel A. M. E. Church, and Reverend **King Solomon Dupont**, Plaintiffs,

v.

**NEW AMSTERDAM CASUALTY COM-PANY**, a New York corporation, Defendant.

Civ. A. No. 641.

United States District Court
N. D. Florida,
Tallahassee Division.

June 10, 1958.

---

Carl R. Pennington, Jr., Tallahassee, Fla., for plaintiffs.

Keen, O'Kelley & Spitz, Tallahassee, Fla., for defendant.

DE VANE, District Judge.

This suit, brought by the Fountain Chapel A. M. E. Church, its Minister and its Board of Trustees, against New Amsterdam Casualty Company, a New York corporation, for a Declaratory Decree, seeks to recover from the insurance company the full amount of a judgment recovered against the Fountain Chapel A. M. E. Church and the Reverend King Solomon DuPont, its Minister, by Roberta Carr, Administratrix of the Estate of Cora Spence Grice, deceased, plus court costs and attorneys' fees. The complicated and confused facts surrounding the case are briefly stated below.

Prior to September 15, 1956, the Fountain Chapel A. M. E. Church owned, and its minister used and operated, a Ford Station Wagon in connection with church activities.

The evidence shows this station wagon was about worn out and just prior to September 15, 1956, the Church purchased a 1954 Mercury Station Wagon for the same uses and purposes. A general insurance agency operating in Tallahassee, Florida, under the name of Alex J. Coakley Agency had theretofore issued an insurance policy of defendant on the Ford Station Wagon which did not expire until October 1, 1956. Plaintiffs' witnesses testified that when they made application to Mr. Coakley for the same kind of policy on the 1954 Mercury Station Wagon, they notified him that they were abandoning the use of the Ford Station Wagon and did not desire the insurance on that automobile renewed when it expired. Agent Coakley vigorously denied this statement and just prior to the termination of the insurance policy on the Ford Station Wagon, he wrote a new policy thereon for the Church and sent it a bill for the premium due.

When Coakley issued the policy on the Mercury Station Wagon on September 15, 1956, he quoted a rate of $46 per annum for the liability insurance purchased and the agents of the Church paid him the amount thereof at the time the application was made for the insurance. In due course this premium was transmitted by Agent Coakley to defendant and upon its receipt, defendant discovered that its agent Coakley had undercharged the Church $11.76 on account of this premium and promptly billed Coakley for the difference. By this time Coakley had issued the new policy of insurance on the Ford Station Wagon. On November 30, 1956, Coakley sent the Church a second bill for $47.76, which represented the $36 premium on the Ford Station Wagon plus the $11.76 remaining due on the Mercury Station Wagon. The latter bill remaining unpaid on December 28, 1956, the insurance company mailed to the Church and its officers notice of the cancellation of the insurance policy on the Mercury Station Wagon, leaving the policy in effect and the premium unpaid on the Ford Station Wagon. Coakley applied the premium refund on the Mercury Station Wagon toward the payment of the premium on the Ford, and on May 7, 1957, sent plaintiffs a further statement showing that they still owed him a balance of $8.48 on account.

In their complaint filed herein plaintiffs allege:

"That defendant attempted to cancel such policy (the Mercury Station Wagon policy) as of 12:01 A.M. January 10, 1957, for alleged non-payment of premium by mailing to the plaintiffs on December 28, A.D. 1956, a notice of cancellation, said notice being received by the plaintiffs either midday on December 31, 1956, or January 2, 1957; that the plaintiffs elected to treat the policy as still in effect because such wrongful attempt to cancel said policy was invalid and of no effect in that the full annual premium had been paid to the defendant by the plaintiffs and inasmuch as the said notice was not received by the plaintiffs a full ten day period of time prior to the assigned cancellation time; * * *"

This is a forthright statement of the position of plaintiffs in this case. It

exhibits shocking ignorance as to the law applicable to insurance. Plaintiffs' witnesses testified while on the stand that they received the several statements from Agent Coakley, paid no attention to any of them, never notified him that they desired the insurance policy on the Ford cancelled after their meeting when the policy was issued on the Mercury Station Wagon, and after the receipt of the cancellation notice never went near Agent Coakley's office or attempted in any way to protect their interest in the policy of insurance that had been cancelled by the insurance company. Defendant's insurance policy contained the following provision with reference to cancellation:

"*Cancelation* This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to the mailing.

"If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation."

The point specifically presented by this case has never been passed upon by the Supreme Court of Florida, but its decision in State ex rel. Pacific Mut. Life Ins. Co. v. Larson, 152 Fla. 729, 12 So.2d 896, although involving another question, is authority for the right of an insurance company to cancel a policy at will. Furthermore, the U. S. Court of Appeals, Fifth Circuit, in General Accident Fire & Life Assurance Corporation v. Schero, 151 F.2d 825, 826, did pass upon the precise question presented in this case. In that case the cancellation clause provided:

"This Policy may be cancelled by the Corporation by mailing written notice to the Assured at the location of the premises shown in Item 1(e) of the Declarations or at his business address shown in Item 1(b) thereof, stating when thereafter such cancellation shall be effective, in which case the corporation upon demand shall refund the excess of premium paid by the Assured above the pro rata premium for the expired term. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall be the end of the policy period. Cancellation shall be without prejudice to any claim originating prior to such elective date. Delivery of such written notice either by the Assured or by the Corporation shall be equivalent to mailing and the check of the Corporation or its representative similarly mailed or delivered shall be a sufficient tender of any refund of premium due the Assured. Reinstatement, if granted by the Corporation after cancellation or suspension, shall be in writing."

In construing this clause the Court stated:

"Appellees vigorously contest these positions. Insisting: that the notice of cancellation was ineffective because the premium did not accompany the notice, and that the time when the loss occurred, therefore, presented no material issue of fact, that the evidence, as matter of law, showed that there was no such failure to keep books as excluded defendants' liability; that if there was such failure, the insurer

has waived it; and that no reversible error has been shown; they urge upon us that the judgment should be affirmed.

"(1–3) We do not think so. A comparison of the cancellation clause in the policy in suit with the clause of the standard policy, on which so much has been written, leads us to the firm conclusion: that the cases from Florida and elsewhere which construe the standard policy, as defendants would have us construe this one, are not in point here; and that the matter is open to us to decide. Summers v. Travelers Insurance Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1336, construes a clause, the exact counterpart of the clause in question here, as not requiring the return of premium to accompany the notice, and we think this is a correct interpretation of its meaning and effect. We, therefore, hold: that the notice of cancellation was effective; * * "

For other cases to the same effect see Summers v. Travelers Insurance Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1336; Guthrie v. Great American Insurance Co., 4 Cir., 151 F.2d 738 and Marchessault v. Natural Grange Mutual Liability Co., 2 Cir., 229 F.2d 698. Many other cases are cited in the briefs filed by the respective parties, but the Court considers further citation of authority unnecessary.

Plaintiffs further contend that the failure of defendant to return to them directly the unearned premium is now estopped to assert cancellation of the policy. This claim is asserted by plaintiffs as a bare legal right and no evidence will be found in the record indicating that defendant was guilty of any conduct or committed any act or omission to influence plaintiffs to believe that their policy on the Mercury Station Wagon was still in effect. Under Florida law this is an essential element of estoppel. Jarrard v. Associates Discount Corporation, Fla., 99 So.2d 272.

There is nothing in this record to support the claim of estoppel attempted to be asserted by plaintiffs against defendant in this case.

This is a difficult case for a Court to have to decide as it does. The testimony of plaintiffs' witnesses clearly disclose that they are unversed in insurance matters and that they ignorantly stood by and took no action on an entirely false premise that led them into trouble. On the other hand, defendant's agent Coakley wasn't much better. The evidence shows that he was not attentive to his clients. Despite the fact he wasn't legally required to do anything in this case, most agents would have seen to it that these plaintiffs lost nothing by the cancellation. The period of time was long enough between the cancellation date and the accident for plaintiffs to have secured protection they needed had they been wise and diligent enough to do so or had Coakley personally called the matter to their attention and explained the full legal effect of the notice of cancellation.

Reluctant as it is to do so, the Court holds that in this case plaintiffs have no cause of action against the defendant and the prayer for a Declaratory Decree adjudging the defendant liable for the damages and expenses they have suffered as a consequence of the simple negligent act of Reverend DuPont must be denied. An appropriate order will be entered in conformity with this memorandum decision.