[No. B158405. Second Dist., Div. Five. Aug. 8, 2003.]

VASILIOS S. LAMBROS, Plaintiff and Appellant, v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant and
Respondent.

44

**COUNSEL**

Specter Specter Evans & Manogue, Joseph N. Kravec, Jr.; Berger Kahn and Arthur Grebow for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Geoffrey T. Tong, Becky J. Belke and Margaret Levy for Defendant and Respondent.

## Opinion

**ARMSTRONG, J.**—This case concerns the application of Insurance Code section 481 to appellant Vasilios S. Lambros's life insurance policy, issued by respondent Metropolitan Life Insurance Company(MetLife). That statute provides that "(a) Unless the insurance contract otherwise provides, a person insured is entitled to a return of premium if the policy is canceled, rejected, surrendered, or rescinded, as follows: ... (2) Where the insurance is made for a definite period of time and the insured surrenders his policy, to such proportion of the premium as corresponds with the unexpired time...." (Ins. Code, § 481, subd. (a)(2).)

On respondent's motion for summary judgment, the trial court determined that appellant's policy did "otherwise provide." We agree, and affirm the ensuing judgment in favor of MetLife.

### Facts

On August 20, 1948, in Washington D.C., appellant bought a $100,000 whole life insurance policy from MetLife. The policy had an annual premium of $2,420, payable once a year on the anniversary of the policy's purchase. The policy provided that payment of the annual premium maintained the policy for a period of 12 months.

The policy also provided that appellant could surrender the policy and "receive a Cash Surrender Value which shall be equal to the cash value according to the table on page 5, plus the reserve on any paid-up dividend additions and plus the amount of any dividend accumulations then outstanding to the credit of this Policy, and less any indebtedness, including interest then accrued, for which this Policy is security to the Company."

The "table on page 5" sets forth the "benefits available at the end of the year indicated," based on "number of years policy has been in force with all due premiums paid," for the next 31 years.[1] In the section which immediately follows the table, the policy provides that "The cash value at anytime prior to the end of the period for which premiums have been paid shall be the cash value at the end of such period less interest from the date of payment to the end of such period at the effective rate of 5 percent per annum."

---

[1] In the early 1990's, appellant requested that information for later years, not included on the table. MetLife supplied that information.

Text following the table explained that the benefits on surrender "are computed by the Standard Nonforfeiture Value Method producing values equal to the full net level premium reserve for the fifteenth and all subsequent anniversaries ...."

In September 1998, after paying his August 1998 premium, appellant submitted a request to surrender his policy. On or about October 23, 1998, MetLife sent him a check for $5,951 and a statement which explained that the amount was calculated by adding the cash value of $80,538 to the "current dividend" of $4,795[2] and the "terminal dividend" of $7,200, then subtracting the total of an outstanding loan and the interest on that loan. The statement also showed that the policy would remain in effect until August 20, 1999. The cash value did not include a refund of any portion of the premium paid on August 20, 1998.

Appellant sued MetLife for breach of contract and for violation of Business and Professions Code section 17200 et seq.,[3] contending that nothing in the policy allowed MetLife to respond to his request for surrender by continuing coverage and retaining the full premium, and that MetLife was obligated instead to terminate coverage and refund a portion of his premium. MetLife moved for summary judgment, as did appellant.[4]

In addition to the undisputed facts set forth above, MetLife proposed as undisputed that "[t]he Policy did not contain a provision for a refund of any part of the annual premium when it was surrendered prior to the end of a Policy year." Appellant agreed that the policy did not contain such a provision, but contended that by operation of law, Insurance Code section 481 was incorporated into the policy and made a part of it.

---

[2] MetLife proposed as undisputed that the sum represented a dividend through August of 1999. Appellant disputed the fact, contending that the "current dividend" represented only a dividend through October 23, 1998, the day of his surrender. MetLife's factual citations are to the deposition and declaration of one of its managers, who testified that the dividend was, as MetLife asserts, one through August of 1999, and that because the amount of the dividend due in August of 1999 had not been determined when appellant surrendered his policy, MetLife gave appellant the same amount he had received in August of 1998, its standard practice. Appellant cited the testimony that the 1999 amount was determined with reference to the previous year's dividend. He also cited the provision of the policy which requires MetLife to pay a dividend at the end of the year and argued that the policy did not allow MetLife to pay a year-end dividend before the end of the year, and thus that it did not do so.

[3] He also sued for breach of fiduciary duty and negligence, but demurrer was sustained as to those causes of action, without leave to amend.

[4] The parties' separate statements of undisputed facts, supporting documents, and responses to those statements are included in the clerk's transcript, but the motions themselves are not. MetLife has provided us with its motion, in an appendix. We rely on the trial court's description of appellant's motion.

In the separate statement which accompanied his cross-motion for summary judgment, appellant proffered evidence concerning MetLife's policies and practices regarding refund of premiums in policies such as his. Some of this evidence comes from the deposition of Jeanne Keller, supervisor of MetLife's rates and values department. She testified that MetLife does not refund premiums when policies such as appellant's are surrendered for cash value, and that MetLife so notifies policyholders at the time of surrender.[5]

Appellant also proffered documents relating to a 1943 resolution of the MetLife board, in which that board noted that the cash surrender value of a whole life policy (then termed an "ordinary policy") was approximately the same as the sum the insured could secure by taking out the maximum available loan on the policy. The board also noted that if the loan option was chosen, the policy would remain in force. The board thus resolved that when a policy was surrendered prior to the next premium due date, "in the event of death or disability of the insured on or before such due date, the same death or disability benefit be granted that would have been granted had the amount of the cash surrender been advanced as a loan." MetLife decided not to mention this practice in sales presentations, because it could be changed.

The trial court granted MetLife's motion and denied appellant's, determining that nothing in the policy entitled appellant to a refund of premiums and that Insurance Code section 481 did not apply because the statute does not apply to life insurance, citing *Jennings v. Prudential Ins. Co.* (1975) 48 Cal.App.3d 8 [121 Cal.Rptr. 125], and because the policy, in the words of Insurance Code section 481, "otherwise provides." The court also determined that the cause of action under Business and Professions Code section 17200 was derived from the contract claim and fell with it.

DISCUSSION

In *Jennings v. Prudential Ins. Co., supra,* 48 Cal.App.3d 8, the insured surrendered his life insurance policy, deposited the insurance company's check for the cash surrender value, and died a few days later. The insured's widow sued for policy benefits, contending, inter alia, that because the insurance company had not fulfilled its Insurance Code section 481 obligation to return premiums, the policy remained in force. (48 Cal.App.3d at p. 16.) The trial court rejected the contention and we affirmed.

We ruled that "We find no merit in appellant's contention that Insurance Code section 481 is applicable. Appellant cites no authority applying section 481

---

[5] After 1987, MetLife issued policies which specify that cash value includes a refund of part of the premiums.

to the cash surrender option of a life insurance policy. One court has noted that section 481 is 'obviously applicable to insurance such as fire insurance, but less obviously applicable to life insurance or annuities.... [¶] ... There can be no doubt that from [an] early date the Legislature treated return premiums as one thing, and cash paid on surrender or cancellation of life policies as quite another.' (*Equitable Life etc. Soc. v. Johnson* [(1942)] 53 Cal.App.2d 49, 73, 74 [127 P.2d 95]; see also *State v. Larson* (1943) 152 Fla. 729 [12 So.2d 896, 897].)" (*Jennings v. Prudential Ins. Co., supra,* 48 Cal.App.3d at p. 18.)

Appellant contends that this statement is dicta, and does not amount to a holding that Insurance Code section 481 is inapplicable to life insurance policies. He attacks *Equitable Life etc. Soc. v Johnson, supra,* 53 Cal.App.2d 49, cited by *Jennings,* on the same ground. ■ We need not concern ourselves with the arguments, because *Jennings* was clearly right when it went on to say that "By its terms section 481 is applicable '[u]nless the insurance contract otherwise provides, ...' (See *Jensen v. Allstate Ins. Co.*[(1973)] 32 Cal.App.3d 789, 793–794 [108 Cal.Rptr. 498].) Thus it is within the power of the parties to contract that upon the insured's decision to surrender the policy, the amount to be returned to the insured shall be governed by the terms of the cash value option and tables contained in the policy, excluding the return of so-called 'unearned' premiums." (*Jennings v. Prudential Ins. Co., supra,* 48 Cal.App.3d at p. 18.)[6]

Appellant's argument is essentially that Insurance Code section 481 applies unless a policy specifically states, perhaps in precisely these words, that premiums will not be refunded when the policy is surrendered. ■ We do not think that the Insurance Code requires anything so literal. Appellant's policy tells policyholders exactly what they will receive on surrender. It says that cash surrender value will be paid, and that cash surrender value consists of the cash value according to the table in the policy, plus the reserve on paid-up dividend additions, plus the amount of any dividend accumulations then outstanding, less any indebtedness.

Further, the policy specifically recognizes that surrender may occur prior to the end of a paid-up policy period and provides that in that case, the cash

---

[6] We note, too, that for a time the Legislature specifically provided for life insurance policies: in 1989, section 10164.2 was added to the Insurance Code. It provided that when a life insurance policy was cancelled, "the insurer shall return to the insured or owner all unearned premiums and other moneys due the insured or owner in relation to that policy ...," and set a time limit. (Stats. 1989, ch. 713, § 3, p. 2345.) However, the statute was amended in 1996 to eliminate the reference to unearned premiums. It now provides only that the insurer must return "all moneys due in relation to that policy ...." (Ins. Code § 10164.2, subd. (a).) When it repealed the provision concerning the return of premiums, the Legislature left no room for courts to add the term, as implied by law. We thus disagree with the dissent on this point. The Legislature has spoken on the law.

value is "the cash value at the end of such period less interest from the date of payment to the end of such period at the effective rate of 5 percent per annum."

■ This policy is not ambiguous, triggering the rule that ambiguities must be construed against the drafter. (*Vargas v. Athena Assurance Co.* (2001) 95 Cal.App.4th 461, 465 [115 Cal.Rptr.2d 426].) Instead, the question of value on surrender is fully covered. The policy describes the exclusive method of determining surrender value. By telling the policyholder what will be paid, the policy explains what will not be paid. There is no specific reference to premiums, but none is necessary. On any fair reading of the policy, surrender value does not include a return of premiums.

Like the policy in *Jennings*, appellant's policy specifies that the surrender value, even before the end of a policy period, will be calculated with reference to the tables contained in the policy and other matters. Refund of premiums is not included in the calculation.

Appellant seeks to distinguish *Jennings* by arguing that the policy in that case was not identical to the one before us here, in that this policy, unlike the *Jennings* policy, discounts the surrender value if the surrender is made prior to the end of the period for which premiums have been paid. The distinction is not, for our purposes, meaningful. *Jennings* did not base its holding on the substance of the method of calculation of surrender value, but on the fact that the policy set forth such a method, one which did not involve a refund of premiums. We find that *Jennings* thus correctly interpreted the statute.[7]

*The Unfair Competition Act Claim*

In this context, "unfair competition" means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200 et seq.; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

Appellant argues that the cause of action survives summary judgment because the evidence is that MetLife breached its contract, violated Insurance Code section 481, and engaged in unfair and fraudulent business practices. As we have seen, appellant did not establish even a triable issue on breach of contract. Since we have found that MetLife had no obligation under Insurance Code section 481 on this policy, we cannot see even a triable issue on whether it breached any statutory obligation.

---

[7] We do not agree with the dissent that this case may be determined under the doctrine of implied-in-fact contract terms. ■ Only terms which are necessary to carry a contract into effect may be implied into that contract. (Civ. Code, § 1656.)

Nor do we see a triable issue on unfair or deceptive practices. Appellant relies on the facts concerning the MetLife board's 1943 resolution, the fact that the cash surrender statement includes the information that the policy does not provide for premium refunds, and the fact that the policy does not state, in those precise words, that premiums will not be refunded on cash surrender. Appellant argues that these facts show a pattern of fraud and deception: MetLife decided not to refund premiums although it knew that it should, then concealed the information about this improper practices from its customers. The facts do not support any such inferences.

In 1943, MetLife decided to continue coverage for its insureds under certain circumstances. Nothing in the resolution or other documents proffered by appellant so much as indicates that MetLife attempted to wrongfully withhold a refund which was due under any statute or under the policy. The policy does not include the words "premiums will not be refunded," but it does set forth the method of calculation of the cash surrender value, thus informing the policyholder that premiums will not be refunded. The fact that the statement explaining the cash value includes certain information does not logically imply that MetLife fraudulently concealed the information before it issued the check. Appellant presented no evidence of any unfair or fraudulent business act or practice or any unfair, deceptive, untrue or misleading advertising.

Appellant also argues that his claims brought on behalf of the general public survive even if his individual claims do not. Those claims are that MetLife does not refund premiums when a pre-1987 whole life policy such as appellant's is surrendered, thus breaching its contracts and violating Insurance Code section 481, and the same fraudulent and deceptive practices theories discussed above. As we have seen, there is no triable issue on any of the claims.

DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Turner, P. J., concurred.

**MOSK, J.,**—I respectfully dissent.

In August 1948, Vasilios S. Lambros (Lambros) bought a whole life insurance policy from Metropolitan Life Insurance Company (MetLife). Lambros purchased the policy from a New York company in the District of Columbia and moved to California, from which, for many years, he paid premiums to MetLife. In 1998, Lambros paid the full annual premium and

then during the year covered by that premium exercised his right to surrender the policy and receive the cash surrender value. He also requested the return of that portion of the premium attributable to the period after the surrender of the policy—i.e., the unearned premium. MetLife refused to return the unearned premium. The majority hold that even though there is no reference in the policy to what happens to unearned premiums upon surrender of the policy, the provision for cash surrender value provides what the policyholder receives upon surrender of the policy, and thus the return of unearned premium is, in effect, excluded by the policy.

It is important to distinguish between cash surrender value and premiums. Under the express terms of the MetLife policy, when Lambros surrendered his policy, he was entitled to receive certain "benefits" that he had already accrued. Those benefits consisted of the "cash value" (or "cash surrender value") and "the amount of any dividend accumulations then outstanding to the credit of this Policy." Lambros's policy provides that cash surrender value is "computed by the Standard Nonforfeiture Value Method producing values equal to the full net level premium reserve for the fifteenth and all subsequent anniversaries including those not shown." The policy also specifies that "[t]he cash value at any time prior to the end of the period for which premiums have been paid shall be the cash value at the end of such period less interest from the date of payment to the end of such period at the effective rate of 5 percent per annum." The cash surrender value on life insurance policies is a "property right[]" created by the policy. (*State ex rel. Pacific Mut. Life Ins. Co. v. Larson* (1943) 152 Fla. 729 [12 So.2d 896, 897].)

Premiums are payments for the insurance and other rights that accrue under the policy. Although premium payments may be one aspect of the computation of cash value, " '[t]here can be no doubt that from [an] early date the Legislature treated return premiums as one thing, and cash paid on surrender or cancellation of life policies as quite another.' [Citations.]" (*Jennings v. Prudential Ins. Co.* (1975) 48 Cal.App.3d 8, 18 [121 Cal.Rptr. 125] (*Jennings*), quoting *Equitable Life Assurance Soc. v. Johnson* (1942) 53 Cal.App.2d 49, 74 [127 P.2d 95].)

Cash surrender value is, like the insurance itself, a "benefit" that is acquired by paying the premium. But the return of an unearned premium is not a benefit. Return of an unearned premium is a right under any or all of contractual, quasi-contractual or statutory law theories. A leading authority has said, "[a]s a general rule, an insurer is entitled only to such premium as the risk carried reasonably warrants. It follows that where a greater premium has been paid, or a premium has been paid for which there has been no corresponding assumption of risk, the unearned premium should be returned to the insured. To illustrate, upon canceling a policy an insurer must return

the advance premiums which have been paid and are unearned. [¶] The duty of the insurer to return unearned premiums is contractual or quasi-contractual in nature." (5 Couch on Insurance (3d ed. 1997) § 79:6, pp. 79-10 to 79-11.)

In coming to my conclusion, I rely upon California law. Although originally New York or Washington, D.C. law would have applied because those were the locations of performance, by accepting premium payments in California for the policy, MetLife waived the right to assert that a law other than California law applied. (*Blair v. New York Life Ins. Co.* (1940) 40 Cal.App.2d 494, 498–499 [104 P.2d 1075]; see also *Baekgaard v. Carreiro* (9th Cir. 1956) 237 F.2d 459, 466, fn. 3.)

Insurance Code section 481, subdivision (a) (section 481) requires the return of unearned premiums "[u]nless the insurance contract otherwise provides."[1] The majority hold that the contract "otherwise provides" for the unearned premium by not including it in what has to be given to the surrendering policyholder. I believe that the obligation to return an unearned premium is an implied-in-fact or implied-in-law term of the policy. And if that obligation cannot be implied, there being no reference to that obligation in the policy, return of the unearned premium is required by section 481.

## 1. *Majority's Interpretation*

In interpreting an insurance policy, it is "a cardinal rule of interpretation ... that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder." (*Island v. Fireman's Fund Indem. Co.* (1947) 30 Cal.2d 541, 548 [184 P.2d 153].) Moreover, "[a]ny uncertainties or ambiguities in the policy will be resolved against the insurer." (*Vargas v. Athena Assurance Co.* (2001) 95 Cal.App.4th 461, 465 [115 Cal.Rptr.2d 426]; *Continental Casualty Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801].) Although the insured-insurer relationship may not be a true fiduciary relationship, courts have imposed " 'special and heightened' " duties on an insurer because of the relationship. (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1150 [113 Cal.Rptr.2d 70, 33 P.3d 487].)

The majority's interpretation of the policy fails to take into account the distinction between cash surrender value and premiums. In reaching their

---

[1] Section 481 provides as follows: "(a) Unless the insurance contract otherwise provides, a person insured is entitled to a return of premium if the policy is canceled, rejected, surrendered, or rescinded, as follows: ... [¶] ... (b) No contract for individual motor vehicle liability or homeowners' multiple-peril insurance may contain a provision which mandates that the premium for such policy shall be fully earned upon the happening of any contingency except the expiration of the policy itself. This subdivision shall not apply to policy fees or membership fees."

conclusion that the policy's silence as to the return or retention of unearned premiums means they need not be returned, the majority rely upon *Jennings, supra,* 48 Cal.App.3d at page 18, which said, without explanation, that in a particular policy the cash value option "exclud[es] the return of so-called 'unearned' premiums." The language in *Jennings* appears to be based on the fact that the tabular cash value was calculated to the date to which the premiums were paid without any provision for an interest discount for the period after the surrender of the policy. Thus, the unearned premium was factored into the surrender value. The policyholder received the full cash value for the entire premium period no matter when he surrendered his policy. That the court in *Jennings* relied on this factor is demonstrated by its statement that "[t]he fact that the cash surrender value was calculated under the policy according to the date to which the premium had been paid, made the cash value greater than it would have been if calculated as of the date of surrender. [Citation omitted.] It is not unfair to permit the insurer to retain the premiums in consideration of the insured's right to exercise the cash value option at the agreed tabular values." (*Id.* at p. 19, fn. omitted.)

Here, however, MetLife reduced the cash surrender value by the rate of 5 percent per annum from the surrender date to the end of the period for which the premium was paid. Thus, MetLife retained all of the value of the unearned premium, or even more, without any consideration, except it kept the policy in effect without any right to do so under the policy and without the insured's consent. Lambros did not receive the full cash value for the entire premium paid.

In view of the distinction between cash surrender benefits and premium payments, the absence of any language covering the disposition of unearned premiums upon surrender of the policy, and the rules of interpretation applied to insurance policies, I do not agree with the majority's interpretation of the policy.

## 2. *Implied-in-fact term*

There being no term expressly covering what should be done with the unearned premium, consideration must be given to whether such a term may be implied. California statutes provide that contractual terms may be implied not only "as necessary to carry [the] contract ... into effect" (Civ. Code, § 1656), but also for "things that in law or usage are considered as incidental to a contract" (*ibid.*) and for "[s]tipulations which are necessary to make a contract reasonable, or conformable to usage...." (Civ. Code, § 1655.) " 'Neither law nor equity requires that every term and condition be set forth in a contract. The usual and reasonable terms found in similar contracts may be considered, unexpressed provisions of the contract may be inferred from

the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement' ...." (*Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 545 [54 Cal.Rptr.2d 128].) "Our Civil Code provides that 'Stipulations which are necessary to make a contract reasonable ... are implied ....' (Civ. Code, § 1655.)" (*Walker v. Occidental Life Ins. Co.* (1967) 67 Cal.2d 518, 523 [63 Cal.Rptr. 45, 432 P.2d 741].)

It is common for an insurer to return an unearned premium upon cancellation or surrender of a policy. (6 Couch on Insurance (2d ed. 1985) § 34:29, pp. 884–886; 5 Couch on Insurance, *supra*, § 79:2, p. 79–7.) It is normally assumed that there will be a return of a payment for a product or service that by mutual agreement is not provided. Such a return of an unearned premium is a usual and expected term of an agreement. The subject of unearned premiums is not expressly covered by the MetLife policy. Thus, the provision for the return of the unearned premium should be implied in that policy.

### 3. *Implied-in-law term*

Even if the return of unearned premiums cannot be implied in fact, it should be implied in law. Lambros paid a premium for insurance for an entire year. He is entitled by the policy to surrender that policy during the year and receive certain earned benefits. By surrendering the policy, he communicated that he no longer wanted the insurance for the remainder of the year. He should not have to pay for something he does not want. MetLife may have left the insurance in effect for the remainder of the year, but Lambros did not bargain for that coverage, and there is nothing in the policy that provided for it. MetLife's withholding the unearned premiums results in its retaining monies that are not covered by the insurance contract. Thus, Lambros paid for a service that by mutual agreement he is not to receive. MetLife should not be able to keep those payments.

In other contexts, a party who has paid for consideration not fully received is entitled to the return of the monies paid attributable to that consideration. For example, it is established that " 'where one party has paid the full consideration for the contract, in accordance with its terms, and the other party has not performed, or has only partially performed, the party so performing will be entitled to recover back the consideration paid by him, or its value, in toto or pro tanto as the failure to perform by the other party is total or only partial.' " (*Tulsa Opera House Co. v. Mitchell* (1933) 165 Okla. 61 [24 P.2d 997, 1001], quoting *Bell v. Kanawha Traction & Electric Co.* (1919) 83 W.Va. 640 [98 S.E. 885]; see also *Taylor v. Grand Lodge A.O.U.W.* (1905) 96 Minn. 441 [105 N.W. 408, 410–411] [" 'Where the risk has not been run, whether its not having been run was owing

to the fault, pleasure, or will of the insured or to any other cause, the premium shall be returned, because a policy of insurance is a contract of indemnity' "]; *Grove v. Charles W. Barrett Co.* (1923) 87 Cal.App. 165, 167 [261 P. 739]; *Morlock v. Fink* (1927) 81 Cal.App. 686, 688 [254 P. 578] [common count for money had and received].)

There is no difference between payment for something that will, by mutual consent, be terminated, and payment on a contract, the consideration of which has failed. In the latter situation, it is accepted that the payor is entitled to the return of its money. (See *United States v. Barlow* (1889) 132 U.S. 271, 281–282, [33 L.Ed. 346, 10 S.Ct. 77]; *Louisiana v. Wood* (1880) 102 U.S. 294, 298–299 [26 L.Ed. 153].) So here too, Lambros should have his unearned premium returned.

Similarly, "a person who has paid money to another as full performance of a contract voidable by the payor for mistake and who has received a part of the agreed exchange is entitled, at his election, to keep what he has received and to have restitution of so much of his payment as has not been compensated for by the other's part performance." (*Levy v. Wolff* (1956) 46 Cal.2d 367, 368 [294 P.2d 945]; see also Rest., Restitution, § 25.) The same principle should apply when a contract is, in effect, terminated under its own terms.

An insurer that retains unearned premiums upon a valid surrender of the policy without express authorization is unjustly enriched. (See *Major-Blakeney Corp. v. Jenkins* (1953) 121 Cal.App.2d 325, 339 [263 P.2d 655] [unjust enrichment "presupposes the acceptance and retention of a benefit by one party retained without payment of the reasonable value"]; *Midwest Sports Mktg. v. Hillerich & Bradsby of Can.* (Minn. Ct. App. 1996) 552 N.W.2d 254, 268 [it is " 'morally wrong' " for one party to enrich itself at the expense of another].) Thus, the return of the unearned premium upon surrender of the policy, even if not implied in fact, should be implied in law.

The 1996 amendment to Insurance Code section 10164.2 referred to by the majority is not inconsistent with my position. Originally, that provision provided that when a policy is "canceled," the "insured or owner" is entitled to the return of "all unearned premiums and other moneys due the insured or owner in relation to that policy" within a specified time. (Stats. 1989, ch. 713, §3, p. 2345.) In adding a number of provisions in 1996, the Legislature changed the language concerning the return of unearned premiums to read that when a policy is "surrendered by the policy owner," the "owner" is entitled to the return of "all moneys due in relation to that policy" within a specified time. (Ins. Code, § 10164.2, subd. (a).) As the Legislative Counsel's digest provides, the statute, inter alia, made time periods "applicable only to the surrender by the [policy] owner." (Legis. Counsel Dig., Assem. Bill No. 293 (1995–1996 Reg. Sess.).)

The former version of Insurance Code section 10164.2 referred to a return of unearned premiums and "other moneys." The amended version effected a mere change and simplification in phraseology by deleting the reference to unearned premiums and adding "all moneys due." (Italics added.) The term "all moneys due" includes unearned premiums. A "mere change in phraseology, incident to a revision of the statute, does not result in a change of meaning unless the intent to make such a change clearly appears." (*DeCastro West Chodorow & Burns, Inc. v. Superior Court* (1996) 47 Cal.App.4th 410, 418 [54 Cal.Rptr.2d 792].) Therefore, the change in language does not preclude implying by law a requirement that an insurer return unearned premiums in the event of cancellation.

### 4. Statute

Even if the return of the unearned premium is not an implied term of the policy, it is required by section 481. I do not believe that the language of the policy may be interpreted to exclude the return of the unearned premium. Therefore, if nothing regarding the unearned premium may be implied, the status of the unearned premium is not covered at all. Then, the clear mandate of section 481 requires the return of the unearned premium.

Although the court in *Jennings, supra,* 48 Cal.App.3d at page 18 expressed some doubt that section 481 covered life insurance, I see no basis for that doubt. There is no reference to excluding life insurance. When the Legislature desired to exclude a type of insurance, it did so expressly. (§ 481, subd. (c) [excluding ocean marine insurance]; see 2B Sutherland, Statutes and Statutory Construction (6th ed. 2000) § 49:11, p. 120 [subsequent legislation as interpretive device].)

### CONCLUSION

I would reverse the summary judgment because I believe that Lambros's claim under his policy has merit. I do not express any opinion on the claim under Business and Professions Code section 17200 et seq. (unfair competition law), other than to note that Lambros has not pleaded a violation of any statute. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619 [17 Cal.Rptr.2d 708].)

On August 14, 2003, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 12, 2003.