**Peter VU, Plaintiff–Appellant,**

v.

**PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Defendant–Appellee.**

No. 98–55540.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1998.

Decided April 19, 1999.

Glenn R. Kantor, Gruber & Kantor, Encino, California, for Peter Vu.

Melody S. Mosley, Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Irvine, California, for Prudential Property & Casualty Insurance Company.

Before: KOZINSKI and O'SCANNLAIN, Circuit Judges, and LOVELL,* District Judge.

## CERTIFIED QUESTION TO THE SUPREME COURT OF CALIFORNIA

Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit certifies to the Supreme Court of California a question concerning the application of the one-year statute of limitations as an affirmative defense to any suit brought by an insurance policy holder against his insurance provider, *see* Cal. Ins.Code § 2071 (West 1993), where an insured timely notifies his insurer of covered damage, and the insurer investigates the claim but fails to discover the full extent of the damage. The answer to the certified question will be determinative of this appeal. We respectfully request that

---

* The Honorable Charles C. Lovell, United States District Judge for the District of Montana, sitting by designation.

the Supreme Court of California answer the certified question presented below. Our phrasing of the question is not meant to restrict the court's consideration of the case, and we would be grateful for any guidance the court can give us, whether or not directly responsive to the question as we have phrased it. The panel certifies the question on its own motion and not at the urging of either party.

## Caption of the Case

Peter Vu is deemed the petitioner in this request because he is appealing the district court's ruling on this issue. The caption of the case and the names and addresses of counsel are as follows:

**PETER VU**, Plaintiff–Appellant,

v.

**PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY**, Defendant–Appellee.

## Question of Law to be Answered

Where an insured presents a timely claim to his insurer for property damage under a policy, and the insurer's agent inspects the property but does not discover the full extent of covered damage, does California Insurance Code § 2071 bar a claim brought by the insured more than one year after the damage was sustained but within one year of his discovery of the additional damage? Or, to put the matter differently, does *Neff v. New York Life Ins. Co.*, 30 Cal.2d 165, 180 P.2d 900 (1947), remain good law?

## Statement of Facts [1]

Peter Vu was one of countless insureds who suffered damage to his home as a result of the infamous Northridge earthquake of January 17, 1994. At the time of the earthquake, Vu maintained a homeowner's insurance policy with Prudential Property and Casualty Insurance Company. The policy included an endorsement for earthquake damage, covering $300,000.00 for his dwelling and $30,000.00 for appurtenant structures. A separate 10% deductible applied to each coverage. As required by California Insurance Code § 2071, Vu's policy contained a one-year suit clause providing that "[n]o action can be brought unless ... the action is started within one year after the date of loss." *Cf.* Cal. Ins.Code § 2071 ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity ... unless commenced within 12 months next after inception of the loss."). Within a few days of the earthquake, Vu contacted Prudential to report that his home had sustained observable damage, which included cracks in his walls and ceilings. An adjustor sent by Prudential inspected Vu's home on January 26 and informed him that he was entitled to $2500 for damage to appurtenant structures, but that the damage to his home was only $3962.50, an amount significantly below the policy deductible. On January 30, Prudential paid Vu for the appurtenant-structure damage.

Relying on Prudential's inspection and denial of his claim, Vu took no further action until August 1995 when he discovered substantial additional damage that had been caused by the earthquake. In September 1995, some twenty months after Prudential had effectively denied Vu's claim for damage to his home, an appraiser hired by Vu estimated that the earthquake damage to Vu's home far exceeded the $30,000 deductible.[2] Vu promptly informed Prudential and requested coverage for this newly discovered damage. Pru-

---

1. Some of these facts are disputed but, as the district court resolved the case against Vu on summary judgment, we recite the facts in the light most favorable to Vu. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219–20 (9th Cir.1998).

2. An architect hired by Vu in 1997 concluded that there was $302,728.40 of damage to Vu's home and $348,024.20 in total damage to his property.

dential declined on the ground that the one-year statute of limitations on actions for recovery of claims had expired.

Two and a half years after Prudential had resolved Vu's original claim, but less than a year after Vu discovered the additional damage, Vu filed suit in federal district court. Vu alleged that Prudential was estopped from invoking the one-year statute of limitations because his failure to bring an action within one year was the direct result of his reasonable reliance on Prudential's January 1994 inspection, and on Prudential's representation that the damage to his home fell below the $30,000 deductible. The district court granted Prudential's motion for summary judgment, holding that the one-year statute of limitations acted as a bar to Vu's breach-of-contract claim and to his second claim for breach of the implied covenant of good faith and fair dealing. Vu timely appealed.

### The Need for Certification

 Section 2071's limitations period begins to run from the "inception of the loss," which the California Supreme Court has held "should be determined by reference to reasonable discovery of the loss .... defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Prudential–LMI Commercial Ins. v. Superior Court,* 51 Cal.3d 674, 686–87, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990). The limitations period is tolled "from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied," at which point the limitations period begins to run again. *Id.* at 693, 274 Cal.Rptr. 387, 798 P.2d 1230. However, the insurer may be estopped from asserting the statute of limitations as a defense where the insurer's own conduct caused the insured not to bring a timely suit: "An estoppel arises as a result of some conduct by the defendant, relied

on by the plaintiff, which induces the belated filing of the action." *Id.* at 689–90, 274 Cal.Rptr. 387, 798 P.2d 1230 (internal quotation marks and citation omitted). To establish estoppel against the insurer, the insured must show that he reasonably relied on the insurer's conduct or representations, and that such reliance proved prejudicial. *See Smyth v. USAA Property & Cas. Ins. Co.,* 5 Cal.App.4th 1470, 1478, 7 Cal.Rptr.2d 694 (1992). In *Chase v. Blue Cross of California,* 42 Cal.App.4th 1142, 50 Cal.Rptr.2d 178 (1996), the California Court of Appeal for the First District indicated (without reference to *Prudential–LMI*) that an insurer may be estopped from asserting a statutory or contractual right even if it had no subjective intent to mislead: "An insurer is estopped from asserting a right, even though it did not intend to mislead, as long as the insured reasonably relied to its detriment upon the insurer's action." *Id.* at 1157, 50 Cal. Rptr.2d 178; *see also Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 34, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995).

A recent federal district court decision adopts *Chase*'s view of estoppel in this context. *Ward v. Allstate Insurance Co.,* 964 F.Supp. 307 (C.D.Cal.1997) (Davies, J.), presents facts almost identical to those now before us: The insured made a timely claim for earthquake damage; Allstate's adjustor inspected the damage and determined that it fell below the deductible; over a year after the earthquake, the insured discovered additional damage and made a new claim thereon; and Allstate denied the claim as untimely. *See id.* at 309. Judge Davies rejected Allstate's statute-of-limitations defense, holding that Allstate was estopped from invoking the limitations period because the insured had reasonably relied on the inspection conducted by Allstate's adjustor:

[A]fter the Plaintiffs had submitted a timely claim to Allstate, they relied on the representations of [Allstate's adjustor], a purported expert and agent of Allstate.... For this reason, the Plain-

tiffs allowed the limitations period to elapse without conducting a further investigation. This is precisely the type of situation contemplated by the estoppel doctrine. Allstate cannot be allowed to lull the Plaintiffs into sleeping on their rights, and then use the limitations period as a sword to cut down their claims. *Moreover, even assuming that [Allstate's adjustor] innocently underestimated the damage [to Plaintiffs' home], it is of no moment, as an insurer is estopped from asserting a right, even though it did not intend to mislead, as long as the insured reasonably relied to its detriment upon the insurer's action.*

*Id.* at 312 (citations to *Chase,* 42 Cal. App.4th at 1157, 50 Cal.Rptr.2d 178; *Waller,* 11 Cal.4th at 34, 44 Cal.Rptr.2d 370, 900 P.2d 619, omitted) (emphasis added).

*Chase, Waller* and *Ward* suggest that an insurer may be estopped from invoking the one-year statute of limitations where the insured reasonably relies on the insurer's expertise in discovering the full extent of covered damage. However, another respected California jurist, Judge Wardlaw, came to the opposite conclusion in the case now before us. More significantly, the California Supreme Court recently ordered the depublication of a California Court of Appeal opinion which had relied on *Ward* and come to the same conclusion. The court of appeal there had held as follows:

> [The insurer's] advice that plaintiffs not pursue a claim under the policy might estop [the insurer] from relying on the limitations period for as long as plaintiffs, in reliance on that advice, refrained from pursuing their rights under the policy. A defendant's concealment of a cause of action, or dissuasion of a plaintiff from pursuing it, may estop the defendant from invoking the statute of limitations. So too may an insurer's advice that a loss is not covered, and should not be pursued, preclude the insurer from asserting the consequent running of the limitations period against the insured.

*Nguyen v. 20th Century Ins. Co.,* 79 Cal. Rptr.2d 115, 119 (Cal.Ct.App.1998) (citations and footnote omitted), *review denied and ordered not to be officially published* (Cal. Feb. 17, 1999).

While the precedential effect of a depublication order is not entirely clear, *see, e.g.,* Stephen R. Barnett, *Depublication Deflating: The California Supreme Court's Wonderful Law–Making Machine Begins to Self–Destruct,* 45 Hastings L.J. 519 (1994); Robert S. Gerstein, *"Law by Elimination:" Depublication in the California Supreme Court,* 67 Judicature 293 (1984); Gerald F. Uelmen, *Publication and Depublication of California Court of Appeal Opinions: Is the Eraser Mightier Than the Pencil?,* 26 Loy. L.A. L.Rev. 1007 (1993); Gail Diane Cox, *Innovation– Or Just Court Triage? California's Justices are Trying Very Hard to Clear the Docket,* Nat'l L.J., Oct. 5, 1992, it does tell us that the California Supreme Court has not yet signed on to the *Chase–Ward– Nguyen*rationale. The court may believe that cases such as ours are controlled by *Neff v. New York Life Insurance Co.,* 30 Cal.2d 165, 180 P.2d 900 (1947). With that in mind, we have carefully examined *Neff* but found that it, too, raises troubling questions.

*Neff* held quite categorically that an insurer is not estopped from invoking the statute of limitations as an affirmative defense even if its denial of the claim proved erroneous and the insured relied on it. The court based this conclusion on three key considerations: (1) The insurer advised the insured of the denial of the claim; (2) the relationship between the insurer and insured was entirely arms-length, so that the insured had no reasonable basis for believing he could rely on the insurer's investigation; and (3) the insurer did not make any "deceptive assurances ... tending to lull the insured ... into a sense of security and to forbear suit for the statutory period." *Id.* at 174, 180 P.2d 900 (citation omitted). *Neff* went as far as to say that the insurer will not be estopped from

invoking the statute of limitations even if it acted fraudulently in denying the claim:

> [The insurer], concealing no fact from the insured, was free [to deny the claim]. The insured, knowing all the facts which were known to defendant, was then free to litigate the issue of the liability which [the insurer] had denied. It is a matter of common knowledge that there are often differences of opinion concerning liability under insurance policies and *no mere denial of liability, even though it be alleged to have been made through fraud or mistake, should be held sufficient, without more, to deprive the insurer of its privilege of having the disputed liability litigated within the period prescribed by the statute of limitations.*

*Id.* at 172–73, 180 P.2d 900 (emphasis added).

This sounds like it speaks directly to our case. During the one-year statutory period commencing from the date of denial of his claim, Vu—like the plaintiff in *Neff*—appears to have been in possession of the same facts as his insurer concerning the extent of damage to his property.[3] Vu does not allege that Prudential was aware that the property damage exceeded the deductible on his policy at the time it denied his first claim. Thus, Prudential is not alleged to have concealed facts, nor to have uttered any deceptive assurances to Vu. Prudential did no more than deny Vu's claim based on its inaccurate (possibly negligent) assessment of the damage, and *Neff* clearly instructs that "no mere denial

of liability" may deprive the insurer of the benefit of the limitations period.

The difficulty with applying *Neff* according to its terms is that the passage of time has undermined *Neff*'s key assumption that insurer and insured stand in an entirely arms-length relationship.[4] In cases since *Neff*, California courts have taken a very different view of the relationship between insurer and insured. *See, e.g., Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 817–19, 169 Cal.Rptr. 691, 620 P.2d 141. (1979); *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal.App.4th 1617, 1623, 50 Cal.Rptr.2d 224 (1996). *Egan* and other recent cases seem to suggest that an insurer may have a quasi-fiduciary duty to the insured. This special relationship may form a sufficient basis for the insured to rely on the insurer's inspection under the second prong of *Neff*. *Prudential–LMI* supports this conclusion by holding that the insurer may be estopped from relying on a statute-of-limitations defense even in the absence of misconduct on its part. *Ward* and *Nguyen* so interpreted *Prudential–LMI* (though with no mention of *Neff*), but then *Nguyen* was depublished. In trying to interpret and apply these precedents in a reasoned and consistent fashion, we hear the distant sound of one hand clapping.

The extent to which an insured is entitled to rely on his insurer's investigation of a casualty loss is a significant policy question (no pun intended). An insured who is on notice that he has· suffered a loss is often unaware of the extent of the loss. If the damage is to a complex piece of equip-

---

**3.** Technically, the one-year statute of limitations runs from the date of the loss, but the period is tolled while the insurer is investigating the claim. *See Prudential–LMI,* 51 Cal.3d at 686–87, 693, 274 Cal.Rptr. 387, 798 P.2d 1230. Because Vu notified Prudential of the damage just a few days after the earthquake, he had approximately one year from the date of denial to bring an action.

**4.** It seems clear to us that at least some part of *Neff* has been overruled by later cases. *Neff* states that "no mere denial of liability, even though it be alleged to have been made

through fraud or mistake*"* is sufficient to estop the insurer from invoking the statute of limitations as a defense. *Neff,* 30 Cal.2d at 172, 180 P.2d 900 (emphasis added). This aspect of *Neff,* at least, is at odds with *Prudential–LMI,* which seems to hold that the insurer's fraudulent or negligent conduct may, in fact, preclude the insurer from invoking the statute of limitations if the fraud or negligence induced the insured not to make a timely claim. *See Prudential–LMI,* 51 Cal.3d at 689–90, 274 Cal.Rptr. 387, 798 P.2d 1230. *Prudential–LMI* does not cite *Neff.*

ment such as an automobile, the extent of the damage may not be discoverable by ordinary visual inspection; it may require a trained technician and the use of specialized equipment, both of which may be expensive. The same is true of structural damage to buildings, as in our case. When the insured notifies the insurer and the insurer dispatches a trained investigator to inspect the claim, does the insurer have an obligation to conduct the investigation competently and fairly and, in so doing, "give at least as much consideration to the [insured's] interests as it does to its own"? *Egan*, 24 Cal.3d at 819, 169 Cal.Rptr. 691, 620 P.2d 141. Or to put the matter differently, is a competent inspection of the damage by the trained professional part of the bargained-for benefit of the policy? And is the insured justified in relying on the insurer's good faith and expertise, or must he incur the expense of hiring an independent expert to inspect the damage?

*Neff* holds that the insured may not rely on the insurer's investigation and must incur the additional cost of conducting an independent investigation within the statutory period. If this is an accurate statement of California law, the implications extend beyond the specific facts of this case and affect the respective obligations of insurer and insured across a wide range of insurance policies, including the most ubiquitous such as automobile collision insurance. This may not accord with the reasonable expectations of many insurance policy holders in California, and a clear statement to that effect from the state's highest court may put insureds on notice as to what steps they must take to protect themselves when their claims are denied (in whole or in part) by their insurer after inspection.

We stay proceedings in this case pending receipt of the answer to the certified question. We agree to follow the answer provided by the California Supreme Court. If that court declines to accept the certified question, we will resolve the issue according to our own understanding of California law, misguided though it be. If the California Supreme Court does accept the certified question, the parties shall file a joint report every six months advising us of the status of proceedings.

### Accompanying Materials

The clerk is ordered to provide all relevant briefs and excerpts of record with this request and to forward all under the official seal of the Ninth Circuit pursuant to Rule 29.5(c)-(d).