**Vito CAMPANELLI, et al., Plaintiffs,**

v.

**ALLSTATE INS. CO., et al., Defendants.**

**No. CV 98–7185 RJK.**

United States District Court, C.D. California.

Feb. 7, 2000.

## ORDER GRANTING DEFENDANT ALLSTATE INS. CO.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS JAMES & PAT HOUSE

KELLEHER, District Judge.

Defendant Allstate Insurance Company ("Allstate") filed the instant motion for summary judgment against Plaintiffs James and Pat House (together, the "Houses") on August 24, 1999.[1] The Court heard oral argument on October 4, 1999. Following argument, the Court took the matter under submission. Having considered the parties' briefs and declarations, and the contentions of counsel, the Court now *grants* Defendants' motion for summary judgment.

### FACTUAL BACKGROUND

The Houses are Allstate policyholders. On January 17, 1994, the Northridge earthquake shook the Los Angeles area, damaging many buildings, homes, and structures, including the Houses' home in Woodland Hills, California. Following the earthquake, on January 20, 1994, the Houses submitted a claim for property damage to Allstate.

Allstate paid the Houses $106,287.20 for their claims on June 10, 1994. Following an additional inspection, Allstate paid the Houses another $11,827.51 for their claim of damages.

Allstate closed the Houses' claims by letter dated October 12, 1995. The letter stated that any further damage claims had to be filed within one year of the letter's date.

Both your Allstate policy and California law provide you up to one year to present and pursue a claim under your policy for damages to your home and its contents. Within this one year period you must take reasonable steps to identify any damage your home or its con-

Norman J. Watkins, Ruth Segal, Lynberg & Watkins, Los Angeles, CA, for Plaintiffs.

Peter H. Klee, Nathan S. Arrington, Luce Forward Hamilton & Scripps, San Diego, CA, for Defendants.

1. The Houses are two of more than 25 Plaintiffs who filed suit against Allstate regarding its adjustment of property damage claims in the aftermath of the January 1994 Northridge earthquake.

tents may have suffered in the earthquake, and promptly report the damage to us.

Declaration of Mary DiNapoli, Ex. 4 (August 19, 1999).

On September 2, 1998, the Houses joined in the instant suit against Allstate and Allstate's contractors alleging irregularities in the adjustment of claims following the earthquake. Plaintiffs allege that the engineers employed by Allstate contractors were unlicensed in California. These contractors allegedly employed false stamps in adjusting the Plaintiffs' property damage claims. Plaintiffs further allege that Allstate knew, or perhaps encouraged, these fraudulent adjusting practices. As a result, Plaintiffs contend that they settled their claims for less than they were worth.

Plaintiffs specifically allege claims for:

(1) RICO violations, 18 U.S.C. §§ 1961–1968;

(2) Negligence;

(3) Negligent Misrepresentation;

(4) Intentional Misrepresentation;

(5) Breach of the Covenant of Good Faith and Fair Dealing; and

(6) Breach of Contract.

See Complaint ¶¶ 61–101 (September 2, 1998).

Allstate now moves for summary judgment against the Houses, arguing that their claims for relief are time-barred under the Allstate policy and California law.

## STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it is relevant to a claim or defense and its existence might affect the suit's outcome. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir.1987). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. See Chaffin v. United States, 176 F.3d 1208, 1213 (9th Cir.1999). A court may not, on a motion for summary judgment, evaluate the credibility of evidence. See Leslie v. Grupo ICA, 198 F.3d 1152, 1157–59 (9th Cir.1999).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir.1990). To demonstrate that the nonmoving party has no evidence, the moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence or by any other form of admissible evidence. See Celotex, 477 U.S. at 322, 106 S.Ct. 2548. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325, 106 S.Ct. 2548.

A non-moving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed.R.Civ.P. 56(e) (non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City and County of San

*Francisco,* 125 F.3d 1328, 1331 (9th Cir. 1997), *quoting Anderson,* 477 U.S. at 249, 252, 106 S.Ct. 2505. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

## DISCUSSION

### A. The One–Year Limitations Period

In California, homeowners' insurance policies must contain the following provision:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss.

Cal.Ins.Code § 2071 (West 1993). The Allstate policy held by the Houses included this one-year limitations provision.

■ The California Supreme Court has defined the phrase *inception of the loss* to mean "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." *Prudential–LMI Comm. Ins. v. Superior Court,* 51 Cal.3d 674, 686–87, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990).

Allstate argues that the Houses' "loss" occurred during the January 17, 1994 Northridge earthquake, yet the Houses did not file this lawsuit until September 2, 1998. Thus, Allstate contends that the Houses' claims for relief are barred by the one-year statute of limitations.

The Houses dispute that their loss occurred on January 17, 1994. The Houses argue that the timing of their loss may not be resolved by summary judgment because that inquiry presents a factual issue for trial. *See id.* at 687, 274 Cal.Rptr. 387, 798 P.2d 1230 ("[d]etermining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact."). But the Houses cannot avoid summary judgment in this instance because they have failed to muster *any* factual dispute regarding the date of their loss. Put simply, the Houses have not introduced any evidence to controvert Allstate's evidence that the damage occurred on January 17, 1994.

Aside from the arguments of counsel – which may *not* be considered as evidence of disputed facts sufficient to avoid summary judgment – the Houses have produced only a half-page "Statement of Genuine Issues." This document nowhere controverts Allstate's evidence that the Houses' loss occurred on January 17, 1994. Plaintiffs may not maintain silence in the face of an affirmative burden to display a genuine dispute of material fact pertaining to the inception of the loss. *See* Fed. R.Civ.P. 56(e) (non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."). Since the Houses have failed to controvert Allstate's contention that their loss occurred January 17, 1994, the Court finds, for purposes of this motion, that the inception of the loss was January 17, 1994.

### B. Tolling the One–Year Period During Allstate's Investigation

■ Although the Houses' loss occurred in January 1994, the one-year time period did not expire in January 1995, because the limitations period was tolled while Allstate investigated the claim. The California Supreme Court has loosened the otherwise strict operation of the one-year time bar to permit homeowners to toll the one-year period "from the time an insured gives notice of the damage to his insurer, pursuant to applicable policy notice provisions, until coverage is denied." *Id.* at 693, 274 Cal.Rptr. 387, 798 P.2d 1230. By tolling the one-year limit while the insurance company investigates an insured's claim, the insured avoids a penalty if the

insurer engages in a lengthy investigation. As a practical matter, the one-year period begins to run from the date the insurer denies coverage or settles the claim.

In the case of the Houses, the one-year period was tolled until October 12, 1995. On that date, Allstate informed the Houses in writing that their claim had been resolved, and thus closed. Consequently, the Houses had to file suit before October 12, 1996 to avoid the one-year time bar. Plaintiffs' lawsuit was filed on September 2, 1998, almost two years *after* the one-year limitations period had lapsed.

## C. Actions Brought Outside the Policy Terms are Exempt from the One–Year Limitations Provision

The Houses suggest that their claims are exempt from the operation of the one-year time bar because their claims are not based upon violations of the policy terms. The Houses claim that Allstate's fraudulent conduct occurred *subsequent* to Allstate's handling of the property damage claim.

California courts have distinguished actions brought "on the policy" from those not. Actions brought "on the policy" – for example, bad faith claims against an insurer for its failure to pay benefits – fall within the ambit of the one-year limitations period in § 2071. *See Velasquez v. Truck Ins. Exch.*, 1 Cal.App.4th 712, 719, 5 Cal.Rptr.2d 1 (1991) (applying the statute of limitations strictly "where the bad faith action is based on allegations relating to the handling of a claim or the manner in which it is processed."). In two instances, however, California courts determined that actions against an insurer fell "outside" the policy, thus precluding the insurer from asserting the statute of limitations as a defense. *See Frazier v. Metropolitan Life Ins. Co.*, 169 Cal.App.3d 90, 214 Cal.Rptr. 883 (1985); *Murphy v. Allstate Ins. Co.*, 83 Cal.App.3d 38, 147 Cal.Rptr. 565 (1978).

■ The Houses attempt to fit their case within the narrow exceptions to the one-year statute of limitations carved out in *Frazier* and *Murphy*. But both cases are readily distinguishable.

In *Frazier*, a widow sued her husband's life insurance carrier for failure to pay certain death benefits resulting from the claim of an accidental death. The Court of Appeal affirmed the trial court's denial of the statute of limitations defense on the ground that the insurer had not yet completed its investigation into whether the insured's death was suicide. Since the investigation remained open, the limitations period remained tolled until the widow received word of an adverse decision upon which she could stake her bad faith claim.

> [A]s found by the trial judge, Mrs. Frazier's action does not commence until Metropolitan denies her claim on the ground of suicide. Prior to such time Mrs. Frazier has a right (so far as the policy limitation is concerned) to sit back and wait until denial of claim before urging bad faith. Because it is not until Metropolitan actually denies the claim on the ground of suicide that Mrs. Frazier can actually ascertain whether or not Metropolitan has acted in bad faith. So long as Metropolitan continues to tell Mrs. Frazier they are trying to uncover new evidence, they have not committed an ultimate act of bad faith, and Mrs. Frazier has a right to rely upon their assurances.

*Frazier*, 169 Cal.App.3d at 103–104, 214 Cal.Rptr. 883.

In contrast to *Frazier*, where the one-year limitations period remained tolled while the insurer completed its investigation, the Houses received a letter from Allstate in October 1995 informing them that their claim was resolved. The letter indicated in no uncertain terms that the Houses had one year from that date to file suit related to the handling of the property damage claim.

*Murphy* provides no better support for Plaintiffs' contentions. In *Murphy*, homeowners filed a claim with Allstate after

suffering fire damage to their home and furniture. Allstate retained unlicensed contractors to fix the home and furniture. During the repair process, the contractors neglected to protect the home from the elements by leaving the roof exposed. In effect, the homeowners suffered a *second* loss because of the contractors' shoddy work. The Court of Appeal concluded that this second loss – caused by Allstate's contractors – was not covered under the homeowners' policy. *Murphy,* 83 Cal. App.3d at 45–46, 147 Cal.Rptr. 565.

Unlike the homeowners in *Murphy,* whose claims originated from a second loss subsequent to the initial loss that triggered insurance coverage, the Houses suffered but a single loss. The Northridge earthquake damaged the Houses' home. The Houses have not alleged that Allstate's contractors engaged in such shoddy workmanship that the Houses incurred additional losses beyond those caused by the earthquake. The Houses merely allege that Allstate deprived them (by hiring unlicensed contractors) of appropriate damages suffered during the Northridge earthquake.

This Court's narrow reading of *Frazier* and *Murphy* comports with the approach of later California courts. *See, e.g., CBS Broadcasting Inc. v. Fireman's Fund Ins. Co.,* 70 Cal.App.4th 1075, 1086, 83 Cal. Rptr.2d 197 (1999) (finding a "trend by the appellate courts to limit the exemption from the limitations clause set forth in *Murphy* and *Frazier* to the facts of those cases"). Another court in this District has suggested that *Frazier* and *Murphy* have been limited to their facts by later decisions. *See Bank of America Nat'l Trust & Savings Assoc. v. Allstate Ins. Co.,* 29 F.Supp.2d 1129, 1133–34 (C.D.Cal.1998) (Pregerson, J.). No California case has opined that the subtle distinctions crafted in *Frazier* and *Murphy* deserve expansion.

The Houses' lawsuit for bad faith, tortious conduct, and breach of contract emanates from the policy itself. The lawsuit seeks redress for damages caused by All-state's conduct during the adjustment of the Houses' property damage claim. Accordingly, the Houses' action is "on the policy," and therefore subject to the one-year time bar. Since the Houses' suit was not filed until more than two years after their property damage claim was settled by Allstate, the Houses' suit is time-barred.

## D. Abstention

As a last-gasp measure, the Plaintiffs urge this Court to abstain from deciding this motion until the California Supreme Court resolves a closely related inquiry. *See Vu v. Prudential Property & Casualty Ins. Co.,* 172 F.3d 725 (9th Cir.1999) (certifying a question of law to the California Supreme Court). In January 1994, Vu recovered damages caused by the Northridge earthquake under his Prudential policy. Vu's policy contained a one-year claims limitation provision. In September 1995, Vu discovered *additional* damages that the Prudential adjuster had failed to locate during his inspection. Those additional damages were appraised at more than ten times the deductible on the policy. Vu filed a claim, but Prudential refused to pay citing the one-year time bar. Vu then brought suit; he argued that Allstate should be estopped from benefitting from the time bar, since he had relied upon Prudential to discover the full extent of earthquake damages back in 1994.

The *Vu* court concluded that California appellate courts had authored conflicting opinions interpreting the "inception of the loss" provision. Accordingly, the Ninth Circuit certified the following question to the Supreme Court of California:

> Where an insured presents a timely claim to his insurer for property damage under a policy, and the insurer's agent inspects the property but does not discover the full extent of covered damage, does California Insurance Code § 2071 bar a claim brought by the insured more than one year after the damage was sustained but within one year of his

discovery of the additional damage? Or, to put the matter differently, does *Neff v. New York Life Ins. Co.*, 30 Cal.2d 165, 180 P.2d 900 (1947), remain good law?

*Vu*, 172 F.3d at 727.

The California Supreme Court accepted the certified question. *See* Cal. S.Ct. Minutes (July 28, 1999), Case No. S078271. The Supreme Court has not yet scheduled the matter for hearing.

This Court acknowledges that the California Supreme Court's eventual decision in *Vu* could touch upon the issue presented by Allstate's motion for summary judgment. Nevertheless, *Vu* appears distinguishable on the ground that the insured discovered additional damages at a later point in time following the initial adjustment and settlement. The Houses do not allege later-discovered damages in their claims.

In any event – whether the *Vu* opinion would control the result or not – this Court is not prepared to wait upon the California Supreme Court. This Court has an obligation to decide the cases on its docket, resorting to abstention only in truly exceptional circumstances. *See Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Unlike the Ninth Circuit, this Court cannot certify questions of law to a state authority. *See* Cal.App. R. 29.5 ("The California Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth."). Thus, despite the minimal risk that *Vu* will alter the landscape of jurisprudence in California, the Court must rule now.

## DISPOSITION

The Court ***grants*** Allstate's motion for summary judgment with respect to the claims brought by Plaintiffs James and Pat House.

IT IS SO ORDERED.