[No. S078271. Nov. 5, 2001.]

PETER VU, Plaintiff and Appellant, v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Gruber & Kantor, Glenn R. Kantor, Daniel S. Gruber, Lisa S. Kantor and Sara Smith Ray for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Timothy G. Laddish, Assistant Attorney General, Randall P. Borcherding, Deputy Attorney General, for the State Insurance Commissioner as Amicus Curiae on behalf of Plaintiff and Appellant.

James T. Linford as Amicus Curiae on behalf of Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Janice A. Ramsay, James F. Henshall, Jr., William Wraith, Craig S. Simon; Sonnenschein Nath & Rosenthal, Ronald D. Kent and Susan M. Walker for Defendant and Respondent.

Robie & Matthai, Pamela E. Dunn and Daniel J. Koes for the Personal Insurance Federation of California as Amicus Curiae on behalf of Defendant and Respondent.

Lewis, D'Amato, Brisbois & Bisgaard, Raul L. Martinez, Richard B. Wolf and Elise D. Klein for California FAIR Plan Association as Amicus Curiae on behalf of Defendant and Respondent.

Luce, Forward, Hamilton & Scripps, Peter H. Klee and Marc J. Feldman for the National Association of Independent Insurers as Amicus Curiae on behalf of Defendant and Respondent.

Sonnenschein Nath & Rosenthal, Ronald D. Kent and Susan M. Walker for the Association of California Insurance Companies as Amicus Curiae on behalf of Defendant and Respondent.

Horvitz & Levy, Mitchell C. Tilner and Lisa Perrochet for 21st Century Insurance Company and Truck Insurance Exchange as Amici Curiae.

James Osborne & Associates and W. James Osborne as Amicus Curiae.

Nielsen, Merksamer, Parrinello, Mueller & Naylor and Richard D. Martland for the California Chamber of Commerce and California Manufacturers Association as Amici Curiae.

Barger & Wolen and Kent R. Keller for Century National Insurance Company, the National Association of Independent Insurers and the Association of California Insurance Companies as Amici Curiae.

Robinson, Calcagnie & Robinson and Sharon J. Arkin for United Policyholders as Amicus Curiae.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae.

---

**OPINION**

**KENNARD, J.**—In a case involving an insurance claim for damages caused by the 1994 Northridge earthquake, the United States Court of Appeals for the Ninth Circuit certified the following question to this court: "Where an insured presents a timely claim to his insurer for property damage under a policy, and the insurer's agent inspects the property but does not discover the full extent of covered damage, does California Insurance Code § 2071 bar a claim brought by the insured more than one year after the damage was sustained but within one year of his discovery of the additional damage? Or, to put the matter differently, does *Neff v. New York Life Ins. Co.*, 30 Cal.2d

165, 180 P.2d 900 (1947), remain good law?" (*Vu v. Prudential Property & Cas. Ins. Co.* (9th Cir. 1999) 172 F.3d 725, 727.)[1]

In answering this question, we explain below that *Neff*'s holding that an unconditional denial of coverage commences the running of the one-year statute of limitation of Insurance Code section 2071 remains good law. On the facts of this case, however, Prudential may be estopped to raise the statute of limitations defense if the insured can show that he refrained from bringing a timely action because he reasonably relied on the insurer's factual misrepresentation that his damages were less than his policy's deductible amount. We do not decide whether the federal district court erred in sustaining defendant insurer's motion for summary judgment. That task remains for the United States Court of Appeals, aided, we hope, by the views expressed in this opinion.

## I. THE NINTH CIRCUIT'S CERTIFICATION

The Northridge earthquake struck at 4:31 a.m. on January 17, 1994. It had an estimated magnitude of 6.7 or 6.8 on the Richter Scale. Many residences and commercial buildings were damaged. One report estimated that 450,000 insurance claims were paid, totaling $12.5 billion. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) p. 2.) Another estimated that some 600,000 claims were paid, and put the damage figure at $15.3 billion. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1899 (1999-2000 Reg. Sess.) p. 4.) Many other claims were rejected, often on the basis of the statute of limitations. (Sen. Com. on Ins., Rep., Department of Insurance: In Rubble After Northridge (Aug. 28, 2000) p. 9.) More than 2,000 complaints were filed with the California Insurance Commissioner. (Assem. Com. on Insurance, Rep. on Dept. of Ins., Northridge Earthquake (2000) p. 26.) The Legislature later undertook an extensive investigation of the California Department of Insurance, its handling of these complaints, and its settlements with various insurers. (See generally Sen. Com. on Ins., Rep., Department of Insurance: In Rubble After Northridge, *supra.*) The rejected claims have also engendered considerable litigation and generated five published opinions in the

---

[1] While this case was pending, California's Legislature enacted Code of Civil Procedure section 340.9, which extends the statute of limitations for some insurance claims arising from the Northridge earthquake. We asked the parties to brief the applicability of this statute to the case at hand to determine whether this case was moot. Because the briefs showed there is a substantial dispute whether the statute applies to this suit and whether it is constitutional, we conclude that this case is not moot and that the certified question "may be determinative of a cause pending in the certifying court." (Cal. Rules of Court, rule 29.5(a)(2).) Because the effect, if any, of section 340.9 on this case is not within the scope of the question certified to us by the Ninth Circuit, we do not address it in this opinion.

federal district court. (*Campanelli v. Allstate Ins. Co.* (C.D.Cal. 2000) 85 F.Supp.2d 980; *Vashistha v. Allstate Ins. Co.* (C.D.Cal. 1997) 989 F.Supp. 1029; *Ward v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 307; *Sullivan v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 1407; *Hill v. Allstate Ins. Co.* (C.D.Cal. 1997) 962 F.Supp. 1244.)

The opinion of the Ninth Circuit succinctly summarized the facts and proceedings leading to its order of certification in this case:

"Peter Vu was one of countless insureds who suffered damage to his home as a result of the infamous Northridge earthquake of January 17, 1994. At the time of the earthquake, Vu maintained a homeowner's insurance policy with Prudential Property and Casualty Insurance Company. The policy included an endorsement for earthquake damage, covering $300,000.00 for his dwelling and $30,000.00 for appurtenant structures. A separate 10% deductible applied to each coverage. As required by California Insurance Code § 2071, Vu's policy contained a one-year suit clause providing that '[n]o action can be brought unless . . . the action is started within one year after the date of loss.' Cf. Cal. Ins. Code § 2071 ('No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within 12 months next after inception of the loss.'). Within a few days of the earthquake, Vu contacted Prudential to report that his home had sustained observable damage, which included cracks in his walls and ceilings. An adjuster sent by Prudential inspected Vu's home on January 26 and informed him that he was entitled to $2500 for damage to appurtenant structures, but that the damage to his home was only $3962.50, an amount significantly below the policy deductible. On January 30, Prudential paid Vu for the appurtenant-structure damage.

"Relying on Prudential's inspection and denial of his claim, Vu took no further action until August 1995 when he discovered substantial additional damage that had been caused by the earthquake. In September 1995, some twenty months after Prudential had effectively denied Vu's claim for damage to his home, an appraiser hired by Vu estimated that the earthquake damage to Vu's home far exceeded the $30,000 deductible.[2] Vu promptly informed Prudential and requested coverage for this newly discovered damage. Prudential declined on the ground that the one-year statute of limitations on actions for recovery of claims had expired.

"Two and a half years after Prudential had resolved Vu's original claim, but less than a year after Vu discovered the additional damage, Vu filed suit

---

[2]"An architect hired by Vu in 1997 concluded that there was $302,728.40 of damage to Vu's home and $348,024.20 in total damage to his property." (*Vu v. Prudential Property &. Cas. Ins. Co., supra,* 172 F.3d at p. 727, fn. 2.)

in federal district court. Vu alleged that Prudential was estopped from invoking the one-year statute of limitations because his failure to bring an action within one year was the direct result of his reasonable reliance on Prudential's January 1994 inspection, and on Prudential's representation that the damage to his home fell below the $30,000 deductible. The district court granted Prudential's motion for summary judgment, holding that the one-year statute of limitations acted as a bar to Vu's breach-of-contract claim and to his second claim for breach of the implied covenant of good faith and fair dealing. Vu timely appealed." (*Vu v. Prudential Property & Cas. Ins. Co., supra*, 172 F.3d at pp. 727-728, italics omitted.)

## II. The Statute of Limitations on Insurance Claims

The ordinary statute of limitations for breach of a written contract is four years. (Code Civ. Proc., § 337.) Insurance claims for property damage, however, have a one-year limitation period. (Ins. Code, § 2071.) We explained: "The short statutory limitation period . . . is the result of long insistence by insurance companies that they have additional protection against fraudulent proofs, which they could not meet if claims could be sued upon within four years as in the case of actions on other written instruments. (Code Civ. Proc., § 337.) Originally, the shortened limitation periods were inserted into policies by insurers. Some courts declared such provisions void as against public policy while other courts enforced them in order to protect freedom of contract." (*Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399, 407 [154 P.2d 399].) In 1909, the California Legislature intervened in favor of a shortened period of limitation by enacting the predecessor to Insurance Code section 2071 to impose a 15-month limitation on claims under fire insurance policies. (Stats. 1909, ch. 267, § 1, p. 409.) The statute was fashioned after a New York statute governing lawsuits on fire insurance policies. "Thereafter, as insurance coverage was expanded to cover more than fire (e.g., theft, lightning and other property damage) the New York provision was broadened in 1943 by replacement of the phrase 'after the fire' with . . . 'after inception of the loss.' " (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 683 [274 Cal.Rptr. 387, 798 P.2d 1230], quoting *Proc v. Home Ins. Co.* (1996) 17 N.Y.2d 239, 244 [270 N.Y.S.2d 412, 217 N.E.2d 136, 138].) In 1949, California's Insurance Code section 2071 was amended to conform more closely to the New York law, shortening the limitation period to the one-year period of that law. (*Prudential-LMI Com. Insurance v. Superior Court, supra*, at p. 682.)

For years, California cases debated whether the defense of the statute of limitations was a favored or disfavored defense. In 1999, we resolved the matter: "[T]he affirmative defense based on the statute of limitations should

not be characterized by courts as either 'favored' or 'disfavored.' The two public policies identified above—the one for repose and the other for disposition on the merits—are equally strong, the one being no less important or substantial than the other." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79].) Thus, we approach the issue of the statute of limitations defense in this case with no policy predisposition favoring either side.

## III. ESTOPPEL

The Ninth Circuit has asked us whether our decision in *Neff v. New York Life Ins. Co., supra*, 30 Cal.2d 165 (*Neff*), "remain[s] good law." (*Vu v. Prudential Property & Cas. Ins. Co., supra*, 172 F.3d at p. 727.) *Neff* involved the doctrine of estoppel. In December 1926, Arthur Neff, the insured, became disabled by tuberculosis. He submitted a claim under his disability policy in April 1927. The insurer denied the claim, asserting that it did not appear Arthur was entitled to disability benefits. Arthur did not pursue the matter further. He died in 1937. In 1943, during his widow's last illness, their son discovered the correspondence between the insurer and his father. The son's lawsuit alleged that the insurer knew that Arthur was disabled within the meaning of the policy but fraudulently represented that Arthur was not entitled to policy benefits.

By 1947, when we decided *Neff*, it was already well settled that "an unconditional denial of liability by the insurer after the insured has incurred loss and made claim under the policy gives rise to an immediate right of action." (*Bollinger v. National Fire Ins. Co., supra*, 25 Cal.2d at p. 404.) It was also clear that under some circumstances a misrepresentation or concealment by a defendant might bar it from raising the defense of the statute of limitations. (*Neff, supra*, 30 Cal.2d 165, 169; see *Pashley v. Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 229-232 [153 P.2d 325]; *Kimball v. Pacific Gas & Elec. Co.* (1934) 220 Cal. 203, 210 [30 P.2d 39].) The issue in *Neff* was how to treat the insurer's allegedly false communication that the insured was " 'not entitled to any benefits under [the] policy.' " (*Neff, supra*, at p. 168.) Was this an unconditional denial of liability that would start the running of the statute of limitations? Or was this a misrepresentation of fact on which the insured reasonably relied, and thus a misrepresentation that could furnish a basis for estopping the insurer from raising a statute of limitations defense?

This court viewed the insurer's communication as a denial of liability, not a misrepresentation of fact. Affirming the judgment for the insurer, the *Neff* majority said: "Under the circumstances[,] the conclusion is inescapable that

plaintiff . . . belatedly attempts to assert a cause of action that allegedly accrued to the insured as a result of an alleged representation which was made sixteen years earlier by defendant and which was allowed to stand undisputed for that entire period of time by the aggrieved parties—the insured and his widow—though the same facts on which plaintiff here relies for relief were at all times known to them." (*Neff, supra*, 30 Cal.2d at p. 171.) We rejected the contention that an estoppel could be grounded on the theory that the insurer concealed the "fact" of the insured's right to recovery. We said that such a rule "would mean that no insurer could deny liability without indefinitely suspending the running of the statute of limitations . . . ." (*Id.* at p. 172.) Referring to the case as one involving a difference of opinion on the meaning of the policy, *Neff* concluded that "no mere denial of liability, even though it be alleged to have been made through fraud or mistake, should be held sufficient, without more, to deprive the insurer of its privilege of having the disputed liability litigated within the period prescribed by the statute of limitations." (*Id.* at pp. 172-173.)

Plaintiff argues that developments in the law since *Neff* call for reconsideration of that decision. He points out that although *Neff* itself recognized that "an insurer has the duty of exercising good faith in its dealings with the insured" (*Neff, supra*, 30 Cal.2d at p. 172), later cases have built upon this premise and declared that an insurer and its insured have a "special relationship" (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 685 [254 Cal.Rptr. 211, 765 P.2d 373]; see *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 401 [97 Cal.Rptr.2d 151, 2 P.3d 1]; *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198, 68 A.L.R.2d 883]). Under this special relationship, an insurer's obligations are greater than those of a party to an ordinary commercial contract. (*Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1152 [50 Cal.Rptr.2d 178].) In particular, an insurer is required to "give at least as much consideration to the welfare of its insured as it gives to its own interests." (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) Cases have referred to the relationship between insurer and insured as a limited fiduciary relationship (see *Gibson v. Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 449-450 [208 Cal.Rptr. 511]); as "akin to a fiduciary relationship" (*State Farm Fire & Casualty Co. v. Superior Court* (1989) 216 Cal.App.3d 1222, 1226 [265 Cal.Rptr. 372]); or as one involving the "qualities of decency and humanity inherent in the responsibility of a fiduciary" (*Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 215 [228 Cal.Rptr. 160, 721 P.2d 41]).

■ The insurer-insured relationship, however, is not a true "fiduciary relationship" in the same sense as the relationship between trustee and

beneficiary, or attorney and client. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶ 11:150, p. 11-31.) It is, rather, a relationship often characterized by unequal bargaining power (see *Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 879-884 [27 Cal.Rptr. 172, 377 P.2d 284]) in which the insured must depend on the good faith and performance of the insurer (see *Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 44 [86 Cal.Rptr.2d 855, 980 P.2d 407]; *Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 819). This characteristic has led the courts to impose "special and heightened" duties, but "[w]hile these 'special' duties are akin to, and often resemble, duties which are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, *not* because the insurer *is* a fiduciary." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1148 [271 Cal.Rptr. 246]; see *Hassard, Bonnington, Roger & Huber v. Home Ins. Co.* (S.D.Cal. 1990) 740 F.Supp. 789; Croskey et al., *supra,* ¶ 11:150, p. 11-31.)

Consequently, even as the California cases expanded upon the significance of the special relationship between insurer and insured, they have not viewed those cases as undermining the *Neff* decision. For example, in *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d 1136, the plaintiffs' house sustained subsidence damage in 1981 caused by third party negligence. They filed a claim, which the insurer denied on the ground that the policy did not cover such damage. In 1988, the plaintiffs discovered the policy did cover subsidence damage when caused by third party negligence. They brought suit, alleging that the insurer should be estopped from asserting a statute of limitations defense because it had fraudulently concealed that the policy provided coverage for their damage.

Citing *Neff,* the Court of Appeal in *Love* affirmed a judgment for the insurer. It said: "It is undisputed that the Loves knew the operative facts (i.e., their home was damaged and the causes of damage included third party negligence) . . . . [T]hey admit being told unequivocally in 1981 their claim was denied for lack of coverage. [The insurer] neither 'misrepresented' nor 'concealed' any facts (as opposed to pertinent law or legal theories) . . . ." (*Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d at p. 1145.) In a footnote, *Love* distinguished the estoppel cases cited by the plaintiffs, explaining that in those cases "the defendants' nondisclosures and/or misrepresentations effectively concealed the *facts* upon which the cause of action rested, *not the legal theories* supporting the complainants' claims." (*Id.* at pp. 1145-1146, fn. 5.)

On similar facts, the Ninth Circuit in *Matsumoto v. Republic Ins. Co.* (1986) 792 F.2d 869, applying California law, also found for the insurer:

"Here, [the insurer's] denial of the Matsumotos' claims was, at most, an incorrect interpretation of the terms of [the] contract. We are therefore bound by *Neff v. New York Life Insurance Co.* [citation] wherein the California Supreme Court held that an insurer's disclaimer, even if 'made through fraud or mistake,' could not toll the statute of limitations." (*Id.* at p. 872, fn. omitted.) In a footnote, the Ninth Circuit observed that the Matsumotos did not argue "factual concealment." (*Id.* at p. 872, fn. 3.) Many other cases have applied our decision in *Neff* without suggesting that *Neff*'s reasoning may be outmoded. (See *Prieto v. State Farm Fire & Cas. Co.* (1990) 225 Cal.App.3d 1188 [275 Cal.Rptr. 362]; *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049 [271 Cal.Rptr. 1]; *State Farm Fire & Casualty Co. v. Superior Court* (1989) 210 Cal.App.3d 604 [258 Cal.Rptr. 413]; *Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 [252 Cal.Rptr. 565]; *Lawrence v. Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319]; *Cardosa v. Fireman's Fund Ins. Co.* (1956) 144 Cal.App.2d 279, 283 [300 P.2d 875].)

■ We therefore reaffirm our holding in *Neff, supra,* 30 Cal.2d 165, that a denial of coverage, even if phrased as a "representation" that the policy does not cover the insured's claim, or words to that effect, offers no grounds for estopping the insurer from raising a statute of limitations defense. But as we have seen, *Neff* and many of the cases applying *Neff* were careful to distinguish such a representation from a misrepresentation of *fact*. The latter, they noted, could lead to an estoppel.

Here the undisputed representation is one of fact. William Leggitt, Prudential's inspector, examined Vu's property after the earthquake, and provided Vu with a worksheet showing the specific items of damage and the cost of repairs. Leggitt then explained to Vu that the total cost of repairs, $3,962.50, was less than the policy's deductible amount of $30,000. Leggitt's worksheet and explanation did not merely convey a denial of coverage, or state Prudential's interpretation of the policy. Leggitt communicated specific *facts* describing the nature and amount of damage, and he advised Vu not to file a claim because the total damage Vu had incurred was less that the policy's deductible.

On these facts, Prudential may be estopped from raising a statute of limitations defense if Vu can show that he reasonably relied on Leggett's representation. ■ As we explained in *Benner v. Industrial Acc. Com.* (1945) 26 Cal.2d 346 [159 P.2d 24]: "An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his

power, by which he might have retrieved his position and saved himself from loss.' . . . '. . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.' " (*Id.* at pp. 349-350; see *Ginns v. Savage* (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689]; *Valvo v. University of Southern California* (1977) 67 Cal.App.3d 887, 896 [136 Cal.Rptr. 865]; *Elliano v. Assurance Co. of America* (1970) 3 Cal.App.3d 446 [83 Cal.Rptr. 509]; *Industrial Indem. Co. v. Ind. Acc. Com.* (1953) 115 Cal.App.2d 684 [252 P.2d 649].) *Chase v. Blue Cross of California, supra,* 42 Cal.App.4th 1142, 1157, confirmed that "[a]n insurer is estopped from asserting a right, even though it did not intend to mislead, as long as the insured reasonably relied to its detriment upon the insurer's action."

On point is the decision of the federal district court in *Ward v. Allstate Ins. Co., supra,* 964 F.Supp. 307, another Northridge earthquake case. Applying California law, the federal court said: "[A]fter the Plaintiffs had submitted a timely claim to Allstate, they relied on the representations of Mr. Sanchez, a purported expert and agent of Allstate, that their damage was limited to approximately $20,000. For this reason, the Plaintiffs allowed the limitations period to elapse without conducting a further investigation. This is precisely the type of situation contemplated by the estoppel doctrine. Allstate cannot be allowed to lull the Plaintiffs into sleeping on their rights, and then use the limitations period as a sword to cut down their claims." (964 F.Supp. at p. 312.)

Prudential disputes whether Vu's reliance was reasonable, claiming that Vu did not use due diligence to discover that his damage exceeded the deductible amount under his policy. Whether Vu's reliance was reasonable depends on a myriad of factual questions. These may include: whether Vu himself was qualified to evaluate the damage or had to rely on an expert (see *Vu v. Prudential Property & Cas. Ins. Co., supra,* 172 F.3d 725, 730-731); what Vu told the inspector about his damage; whether the inspector was qualified and, if not, whether Vu knew of his lack of qualification; whether the inspector examined the entire property and, if not, whether Vu knew the inspection was more limited; what led Vu to suspect his damage was greater than the policy's deductible amount, and whether Vu then acted diligently after he so suspected, etc. Our role here is limited to setting out general principles of California law for the assistance of the Ninth Circuit. The application of these principles of law to the specific facts of plaintiff's case is a matter for the federal judiciary.

## IV. CONCLUSION

We answer the Ninth Circuit's certified question as follows: Our decision in *Neff, supra,* 30 Cal.2d 165, remains good law to the extent it holds that an

insurer's denial of a claim on the ground that the policy does not cover the loss in question offers no basis for estopping the insurer from asserting the one-year period of limitation as a defense. *Neff,* however, does not necessarily control the result in this case. Prudential, the insurer, inspected the property of Vu, its insured, to determine the nature and extent of the damage caused by the earthquake. After the inspection, Prudential represented incorrectly to Vu that his loss was less than the policy's deductible amount. Under these circumstances, Prudential would be estopped from raising the one-year statute of limitations of California Insurance Code section 2071 as a defense if Vu proves that he reasonably relied on Prudential's representation in not bringing a lawsuit within the statutory period.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Levy, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.